Ingersoll *v.* Jones.

ALLEGANY GENERAL TERM, September, 1849. *Mullett, Sill, and Marvin, Justices.*

INGERSOLL *vs.* JONES.

The right to maintain an action on the case, for seduction, depends upon the relation of master and servant between the plaintiff and the person seduced; not on that of parent and child. And *it seems* courts will not look beyond the relations which actually exist, for the purpose of inquiring by what right they are sustained.

Where, in an action for seduction it appeared that the person seduced had a mother living, but her father she had not heard from in fourteen years and supposed him dead; that she had lived in the plaintiff's family most of the time since she was seven years old, and the plaintiff had taken her *to bring up;* that she was treated by him like one of his own children, and worked for him as they did, and was supported, clothed, and educated by him, and taken care of by him during her sickness, and he paid the expenses of her lying-in; *Held,* that for the purpose of prosecuting the suit, the plaintiff stood *in loco parentis* to her, and that he could maintain the action; although at the time of the seduction she was at service in another family, with the plaintiff's assent.

Exemplary damages may always be allowed in actions on the case for seduction; whether the suit be brought by the *parent* of the person seduced, or by a person suing as *master* who is not also her parent.

In such an action, where it appears that at the time the seduction occurred, the person seduced was at service in another family, it is not improper for the judge to submit it to the jury to determine, whether the plaintiff was at that time entitled to the wages of the person seduced.

In an action for seduction the defendant cannot be allowed to prove, in mitigation of damages, that he has offered to marry the girl seduced.

MOTION by the defendant for a new trial, on a bill of exceptions. This was an action on the case, for the seduction of

Mary Ann Campbell, the adopted daughter and servant of the plaintiff, and was tried at the Erie circuit in October, 1848. The bill of exceptions states, that Mary Ann Campbell was at the time of the trial about 22 years of age ; that she had lived in the plaintiff's family ever since she was of the age of seven years, but during this time she had for some short periods at different times, with the approval of the plaintiff, been at service in other families.    That the plaintiff *had taken her to bring up,* she was treated by him like one of his own children, worked for him as they did, and was supported, clothed, and educated by him.    In the summer of 1845, she gave birth to a child, at the plaintiff's house.    The defendant was the father of this child.    Some year or more before the birth of the child, Mary Ann Campbell, in pursuance of an arrangement made between Mrs. Borland and the plaintiff's wife, went to service in the family of John Borland, where the connexion between the defendant and Mary Ann, which resulted in her pregnancy, took place.    The girl had what she earned while she worked at Borland's, but some months before her lying-in, she returned to the plaintiff's, remained there and was taken care of during her sickness ; her medical attendants having been employed and paid by the plaintiff.    Mary Ann Campbell testified on the trial that she had not heard from her father since she first went to live with the plaintiff, and she supposed he was dead ; but that she had a mother living.    For the purpose of mitigating damages the defendant offered to prove, that in June of 1847, he offered to marry the girl, and that she was willing to marry him, but that the plaintiff refused to allow it.    This evidence was objected to by the plaintiff's counsel, and excluded, and the defendant's counsel excepted.    Other exceptions were taken on the trial, laying the foundation for the points made by the defendant's counsel on the argument, which are mentioned below.

*E. Cook,* for the defendant, made the following points. 1. The father of Mary Ann Campbell, if living, and if dead her mother, could maintain an action against the defendant for

the seduction ; notwithstanding her residence in the plaintiff's family. The plaintiff in this suit could not therefore recover. (9 *John.* 387. 2 *Wend.* 459. 5 *Cowen*, 106.) 2. The *master*, when not also the parent, can recover no more than the actual pecuniary damages sustained by him. (24 *Wend.* 429. 4 *Denio*, 461.) It was erroneous to charge that exemplary damages might be awarded. 3. The justice erred in submitting to the jury, as a question of fact, whether the plaintiff was entitled to the wages of Mary while at work for Borland. This should have been decided by him as a question of law. 4. The evidence of the offer of marriage, in mitigation of damages, was improperly excluded.

*John Ganson*, for the plaintiff.

*By the Court*, SILL, J.   That the plaintiff stood in fact, *in loco parentis*, to Mary Ann Campbell, that she was his *adopted* daughter, there is no question. The defendant's first point rests solely upon ꞌthe supposition that the plaintiff was bound to go farther, and show a legal right to stand in this relation to her, and that the proof was insufficient to establish it. The right to maintain this action depends upon the relation of master and servant—not of parent and child—and it may well be doubted whether courts will look beyond the relations which actually exist, in an action of this character, for the purpose of inquiring by what right they are sustained. In *Harper* v. *Luffkin*, (7 *Barn. & Cress.* 387,) the plaintiff was allowed to recover for the seduction of his married daughter, who had separated from her husband, and returned to reside in his family. Lord Tenterden, in that case, said " in many instances married women are in *fact*, hired servants. Such contracts are no doubt liable to be defeated at the will of the husband, but unless he interferes, it by no means follows that the relation of master and servant may not exist, *especially* as against third persons, who are wrongdoers. It appears to me that it did in fact exist in thisꞏcase. And in the absence of any interfe-

rence by the husband, *it is not competent to the defendant to set up his right as an answer to the action."*

In *Edmondson v. Machel,* (2 *T. R.* 4,) the plaintiff brought an action for an assault and battery upon his niece, by which the plaintiff lost her service, &c. The girl lived with the plaintiff, who was her aunt, though her mother was living. It does not appear from the report of the case that there was any contract between the plaintiff and the mother of the child, giving the former a right to her services, yet the action was maintained.

But it is not necessary to go the length of these cases to maintain the present suit. The girl has not heard of her father in fourteen years, and supposes him dead. The jury and court were justified in coming to the same conclusion. She has by the *permission, at least,* of her remaining parent, resided in the family of the plaintiff as his child, has rendered him service and obedience, and he, in turn, has educated, protected and supported her ever since she was seven years of age. And if it were necessary to prove a contract, this long acquiescence on the part of those who might claim her services, and the performance during this time of the parental duties assumed by the plaintiff, would be sufficient, prima facie, for the purposes of this suit, to establish it. The bill of exceptions states that the plaintiff "took her to bring up." This may imply a contract.

For the purpose of prosecuting this suit, the plaintiff stands in the place of a natural parent, which embraces the relation of master, and is entitled to the same kind of redress. (*Irwin v. Dearman,* 11 *East,* 23.)

2. The conclusion I have come to on the defendant's first point involves a decision of the second. Exemplary damages may always be allowed in this kind of actions, in the discretion of the jury. After a legal cause of action is made out, they have a right to determine whether the plaintiff and his family have suffered in reputation or otherwise, from the wrongful conduct of the defendant, and to award for such injury, what they may deem a suitable pecuniary redress. The authorities cited by the defendant to this point (24 *Wend.* 424; 4 *Denio,*

461) have no application to the case. In each of those cases the action was brought by the master, for an assault and battery committed by the defendant upon his servant, by which her services were lost. The servant in such case has an action himself for the assault and battery, and may recover exemplary damages. To allow such damages to be recovered by the master, would therefore subject the defendant to their payment twice. For seduction the servant has no action. This distinction is noticed in the case cited by the defendant's counsel, and the propriety of allowing exemplary damages to be recovered in an action like this is there conceded. In *Irwin* v. *Dearman*, above cited, the plaintiff was allowed to recover exemplary damages for the debauching of his adopted daughter. And in *Edmondson* v. *Machell*, the plaintiff was permitted to retain a verdict embracing exemplary damages for an assault and battery upon her servant, who was her niece, upon the latter entering into a stipulation to abandon a suit instituted by her against the defendant for the same cause. 3. Whether Mary Ann Campbell was or was not a servant of Borland when she was seduced is not a material question in this case. If she were, it is no answer to this action. She was the child and servant of the plaintiff at the time of her sickness, and the loss of service and expense resulting from it fell upon him. This entitled him to maintain the action. (9 *John.* 387. 2 *Wend.* 459. 5 *Cowen*, 106. 2 *Barb. S. C. Rep.* 182.) The question presented was a mere speculative one, not affecting the case, and whether the judge decided it right or wrong, or refused to decide it at all, is a matter of no consequence. Charging the jury that the plaintiff's right to recover depended upon his right to the girl's earnings at Borland's was simply giving the defendant one more chance of a verdict than he was entitled to; and of this *he* should not complain. Had the question been material in the case, the judge did right in submitting it to the jury; for it was not clearly and decisively settled by the testimony. 4. The offer to prove, in mitigation of damages, that the defendant had offered to marry the girl, was properly rejected. The plaintiff was not obliged to accept any proposed

compromise *for* the outrage committed on him and his family; much less to receive the seducer of his daughter as a member of it. He had as good a right to claim that the offer was an insult and aggravation of the wrong, as the defendant had to regard it as a mitigation of the injury. It may well be that the character of his family would suffer still more by such an addition. Had a sum of money been offered, (although its recovery is the only reparation the law can make,) clearly proof of such an offer would not have been received in mitigation of the recovery; much less any other proposition for a compromise. It is to be remembered that this action is brought by the parent for the injury to him, and not by the daughter to recover an equivalent for her character. If this were a case where the question could arise, it might perhaps be said that she could not be heard to allege that the man whom she had admitted to her embraces was unfit to become her husband; but no such argument is admissible against the parent.

A new trial must be denied, with costs.

---

ERIE GENERAL TERM, November, 1849.　*Mullett, Sill, and Marvin,* Justices.