BRONSON, Ch. J. concurred in the opinion of Judge PRATT.

Decree affirmed.

## BARTLEY v. RICHTMYER.

Where a step-daughter leaves the house of her step-father and is seduced while in the service of a third person, the step-father can not maintain an action for the seduction, although before the birth of the child she returns to his house, engages in his service, and is there nursed and attended during her confinement.

The action for seduction is founded on the loss of service, and in order to maintain it there must be an actual or constructive relation of master and servant.

And in order to constitute the constructive relation, the master must have the right to command the services of the female at his pleasure.

The relation exists constructively between a father and his infant daughter, although the latter is actually in the service of another, provided the former has a right to reclaim her services at any time.

But a step-father is not, as such, entitled to the services of his step-daughter, and is not liable for her support.

.The action for seduction considered at large and the cases relating thereto cited and commented upon.

THIS was an action on the case brought by the plaintiff for the seduction of his step-daughter, Gitty Ellen McGarey, tried [39] at the Schoharie circuit, before Parker, circuit judge, in May, 1847. It was proved on the trial that Gitty was five years old when the plaintiff married her mother, and that she was

Bartley *v.* Richtmyer.

gotten with child by the defendant in November, 1845, while she was engaged in the service of his father, on her own account and at stipulated wages, she being then about nineteen years old. She had lived in the family of the plaintiff and performed services there until she was about seventeen years old, when she left, without, so far as appeared, any intention of returning, although she afterwards occasionally visited her mother. She was called as a witness for the plaintiff, and on her cross-examination was asked whether at the time she left the plaintiff's service she had any intention to return. The question was objected to and the evidence excluded. After the seduction and about four months before the birth of her child, she returned to the plaintiff's house at his request, and worked in his family at six shillings a week. She was confined there and nursed and attended during her sickness.

Upon these facts the circuit judge charged the jury that the plaintiff stood in such a relation to Gitty Ellen McGarey as to entitle him to maintain the action. The defendant excepted. The jury found a verdict in the plaintiff's favor of $1000, which the supreme court sitting in the third district refused to set aside. After judgment the defendant appealed to this court.

*A. Taber*, for appellant.

The court erred in charging the jury, that the plaintiff stood in such a relation to Gitty Ellen McGarey, as to entitle him to maintain this suit. To support this action, it is necessary that the relation of *master and servant* should exist between the plaintiff and the 'person seduced, either actually, or at least constructively, *at the time of the seduction;* of which there is not the slightest pretence in this case. (*Clark* v. *Fitch*, 2 *Wend.* 459, 462; *Miller* ads. *Thompson*, 1 *Wend.* 447, 449; *Nickleson* v. *Stryker*, 10 *John.* 115, 117; *Martin* v. *Payne*, 9 *John.* 387; *Cases cited, Postlethwaite* v. *Parker*, *Burr. R.* 1879; *Foxs* v. *Wilson, Peake's N. P. Cas.* 55; *Harper* v. *Luffkin*, 7 *Barn. & Cres.* 387; *Saund. Pl. and Ev.* 784, *and cases there* [40] *cited; South* v. *Denniston*, 2 *Watts*, 474; *Logan* v. *Murray*, 6 *Serg. & Rawl.* 175; *McDaniel* v. *Edwards*, 7 *Iredell's R.* 408;

*Phipps* v. *Garland,* 3 *Dever. & Batt. R.* 44; *Wilson* v. *Sproul,* 3 *Penn. Rep.* 49; *Eager* v. *Grimwood,* 16 *Law Jour. new series, Exchequer, p.* 236; *Davies* v. *Williams,* 16 *id. Queen's Bench, p.* 369.)

The principle assumed in each of the above cases, and many others that might be cited, and the very point adjudged in about half of them, which is that the relation of master and servant must exist at the time of the seduction to support the action, would be overruled by the decision complained of in this case. The relation of master and servant did not exist *in fact* at the time of the alledged seduction, between plaintiff and the girl. She had been dismissed by plaintiff, abandoned his house, assumed the exclusive management of her own affairs, and was then in the actual employ and service of another, under stipulated wages.

Neither did the relation of master and servant exist *constructively* between the plaintiff and the girl at the time of the alledged seduction. Such a relation may exist constructively between a father and his infant daughter, founded on his right to reclaim the custody of her person and her services, and his duty to maintain, educate, and provide for her. But *a step- father has no such right, and is under no such duty or obliga- tion ;* consequently there is no foundation whatever for such a constructive relation. (*Tubb and al.* v. *Harrison,* 4 *T. R.* 118; *Cooper* v. *Martin,* 4 *East,* 76; *Commonwealth* v. *Hamilton,* 6 *Mass. Rep.* 273, 275; *Freto* v. *Brown,* 4 *id.* 675; *Town of Min- don* v. *Cox,* 7 *Cow.* 235, 237; *Gray* v. *Ballou,* 4 *Wend.* 403, 404; *Reeve's Dom. Rel.* 320; *and see* 2 *Watts,* 474; *Billingsby* v. *Critchett,* 1 *Brown's Ch. Rep.* 268.)

The court erred in overruling the question to the witness Gitty: "Did you intend ever returning to plaintiff's when you left his house, in 1844?" The question was material to the issue in this cause. (*Saund. Pl. and Ev.* 784.) The supreme court base their decision on the bill of exceptions to a great ex- [41] tent, on assuming, as we insist contrary to the evidence, that she did intend to return and make it her home there, while

the circuit judge had refused to permit us to prove by her that she did not.

*N. Hill, Jr.* for respondent.

For a long time, an *actual* loss of service was deemed necessary in order to maintain this action; but finally, to accommodate the action to cases where the daughter rendered no services, a *fictitious* or *supposed* loss of service was resorted to as the gravamen. (3 *Burr.* 1878; 2 *Durnf. & East,* 166, 168; 1 *Mood. & Malk.* 528; 7 *Carr. & Payne,* 528; 9 *John.* 387; 21 *Wend.* 79.) And the action as at present allowed has been spoken of as an " *invention* of the last fifty years;" as entirely " *anomalous,*" though approving itself " *to the best moral sentiments;*" as one resting purely on a *fiction,* " where the *real gravamen* is made the rule of damages, while the *legal gravamen* is retained on the record;" and as the result of " an *alteration of the law of actions.*" (3 *Eng. Com. Law Rep.* 154, *note;* 3 *Amer. Jur.* 298; 3 *Esp. Rep.* 119, 120; 21 *Wend.* 82 )

The reason why the courts invented this action, and have thus struggled to extend its operation, is because without it there would be no mode of *punishing,* and thus *preventing,* one of the greatest social and domestic wrongs. (3 *Chitty's Black.* 142, *note* 32; *Cro. Eliz.* 771; 2 *Wend.* 461; 4 *Denio,* 463; *Coxe's New Jer. Rep.* 79, 80; 2 *Penningt. Rep.* 589; 2 *Bibb's Rep.* 341, 343.) A mere action to recover for an injury to *property,* by the loss of a *servant,* was always maintainable; but the damages were restricted to the actual *pecuniary loss,* and was therefore strictly *compensatory.* (4 *Denio,* 461; 24 *Wend.* 429.) After the courts begun to recognize a distinction between *children* and mere *menial servants,* the action became essentially a remedy for what the old law regarded as an *imperfect right,* viz., the right to protection from the dishonor, suffering and bereavement consequent upon seduction. (*Cro. Eliz.* 771; 1 *Woode. Lect.* 452–3; 3 *Chitty's Black.* 140, *note* 29; 3 *Eng. Com. Law Rep.* 154, *note;* 1 *Chitty's Gen. Prac.* 2, *note.*)

The *principle* having been settled that the violation of such a right was the subject of redress by action, the courts [42]

could not, upon the settled maxims even of the old law, refuse to extend the remedy to cases new in their circumstances merely, but involving rights of the same character. (*Broom's Legal Maxims*, 91–2 ; 1 *Smith's Lead. Cas.* 130–1, *note ; Ram on Legal Judgm.* 8, 152 *to* 158.) Accordingly it is now settled that the right of prosecuting for seduction is not confined to the father of the child, or to her relatives by blood, or even to those who have a *legal right to her services.* Where the father is dead, the action may be maintained by the mother, or any one standing in *loco parentis ;* e. g. an aunt, uncle, guardian, and even the grandfather of an illegitimate child. (5 *Cowen,* 106 ; 2 *Penningt. Rep.* 383 ; *Reeve's Dom. Rel.* 292 ; 2 *Carr. & Payne,* 303 ; 7 *Watts,* 303 ; 3 *Watts & Serg.* 416.)

The plaintiff in the present case stood in such a relation to Ellen McGarey, as entitled him to maintain this action. He had assumed the place of a parent, and she was regarded as a member of his family at the time of the seduction. The dishonor and suffering consequent upon the defendant's act necessarily fell upon him and his household ; and these being the *real cause of action,* he can maintain it. (*Reeve's Dom. Rel.* 292 ; 3 *Chitty's Black.* 140, *note* 29 ; 3 *Eng. Com. Law Rep.* 154, *note ;* 3 *Amer. Jur.* 298 ; 3 *Esp. Rep.* 119, 120 ; 2 *Wend.* 464 ; 2 *Penningt. Rep.* 589 ; 7 *Watts,* 302 ; 3 *Watts & Serg.* 417.) He is entitled to maintain this action, moreover, on the ground of *pecuniary loss.* She was his servant *in fact* for four months preceding the birth of her child, and he sustained *the expense of her confinement,* besides being *deprived of her services.* This entitles him to sue, though she was not his servant *at the time of the seduction.* (5 *Cowen,* 106, 116, 117 ; 2 *Penningt. Rep.* 383 ; *Reeve's Dom. Rel. Rep.* 292 ; 2 *Wend.* 459 ; 18 *Conn. Rep.* 337.)

The argument that there is no reported case where the action has been maintained by a *step-father* is of no avail. The history of the action shows that this argument has been disregarded from the beginning ; each step in its progress having been necessarily taken without a precedent. Judges and commen- [43] tators have often said that the action ought to be *in form,* what it has long been *in substance*—a means of redressing and

W.T.E

Bartley *v.* Richtmyer.

punishing the wrong done to a family by seduction. There is no reason why the action should not be made to conform to the *true gravamen*, instead of resting on a *false one*. The courts have frequently *modified* it to meet new exigencies, and they have the same power to *modify* that they had to *institute* it. This power results from those principles of the common law which provide for its own improvement, and upon which the courts have often modified *remedies* not only, but *rights*. (*Ram on Legal Judgm.* 8, 158–9 ; 2 *Scho. & Lefroy*, 666 ; *Willes' Rep.* 51 ; 26 *Eng. Com. Law Rep.* 148–9 ; 17 *John.* 391 ; 1 *Hill*, 460.)

BRONSON, Ch. J. The declaration is in case, for debauching Gitty Ellen McGarey, the plaintiff's step-daughter and servant, then under age, and getting her with child, whereby the plaintiff lost her services, and was put to the expenses of her lying in. Actions of this kind are founded on the relation of master and servant ; and the gist of the action, whether it be case or trespass, is the master's loss of services in consequence of the wrong done by the defendant. The principle is the same as it is in an action for beating a servant, by means of which the master lost his services. In neither case does the act done to the servant give any right of action to the master, unless it results in an injury to him. For the beating itself, the servant may sue ; and so she might for the debauching, if it were not for her consent. The principle is plain enough ; but it has to some extent been lost sight of by the courts, in their zeal to punish the defendant, and do something to heal the wounded feelings of others.

It is obvious from the nature of the case, that the master ought not, in point of principle, to recover any thing more than a compensation for the pecuniary loss which he has sustained : and such was formerly the rule in this action, as it is still where the master sues for the battery of a servant. (*Cowden* v. *Wright*, 24 *Wend.* 429 ; *Whitney* v. *Hitchcock*, 4 *Denio*, 461.) But it is now settled, that a father may recover exemplary [44] damages for the seduction of his daughter ; and very large, not

to say outrageous verdicts, have become a part of the fashion of the times. And such verdicts have also been allowed in a few instances where the action was not brought by the father. But this error has not yet become so inveterate as to be beyond the reach of judicial correction. It had its beginning in the case of *Edmondson* v. *Machell*, (2 *T. R.* 4,) which was not an action for seduction, but for beating the plaintiff's niece, *per quod servitium amisit*, and the aunt had a verdict for exemplary damages. This was clearly wrong, as appears from the cases already cited; and it is quite evident that the verdict would have been set aside, if the court had not, in its discretion, denied a new trial, on an undertaking by the plaintiff to pay over the damages to the niece, and an undertaking by the niece not to proceed in an action which she had brought for the same beating. This case has been considered an authority for allowing exemplary damages when the action is brought by one standing *in loco parentis;* but I think it proves the other way.

Since it has been settled that the value of the services actually lost does not constitute the measure of damages when the action is brought by the father, it has been held sufficient for him to show that the daughter was under age, and lived in his family at the time of the seduction, without proving that she had been accustomed to render services. It has been thought enough that the father was entitled to her services, and might have required them if he had chosen to do so. The principle applies although the daughter may have been from home on a visit to a friend at the time of the seduction. And it has been extended to cases where the daughter was in the service of a third person at the time of the seduction, but under such circumstances that the father might have commanded her services at pleasure. (*Martin* v. *Payne*, 9 *John.* 387; *Clark* v. *Fitch*, 2 *Wend.* 459; *Ingersoll* v. *Jones*, 5 *Barb.* 661; *Hornketh* v. *Barr*, 8 *Serg. & Rawle*, 36.) These cases go beyond the rule as it is administered in England. (*Dean* v. *Peel*, 5 *East*, 45; *Blaymire* v. *Haley*, 6 *Mee. & W.* 55; *Harris* v. *Butler*, 2 *id.* [45] 539; *Grinnell* v. *Wells*, 7 *Man. & Gran.* 1033; 8 *Scott N. R.* 741, *S. C.*) `But it is not too much, perhaps, to infer the

relation of master and servant, for the purposes of this action, wherever the father had not abandoned his daughter, and was legally entitled to her services at the time of the seduction.

When the daughter is of full age, the father is not entitled to her services; and he can not maintain this action without showing that the relation of master and servant actually existed at the time of the injury. It is not enough that the daughter returned to his house before the child was born, and he paid the expenses of her sickness. (*Postlethwaite* v. *Parks*, 3 *Burr.* 1878; *Nickleson* v. *Stryker*, 10 *John.* 115.) These were actions of trespass for assaulting the daughter and getting her with child; but they rest on the same general principle as the action on the case. Lying-in or other expenses paid by the father, though they may enhance damages, are not a substantive ground of action. (*Logan* v. *Murray*, 6 *Serg. & Raw.* 175; *South* v. *Denniston*, 2 *Watts*, 474; *Grinnell* v. *Wells*, 17 *Man. & Gran.* 1033; 8 *Scott's N. R.* 741, *S. C.*) The gist of the action is loss of service.

When a female under age is seduced after the death of her father, and while in the service of one standing *in loco parentis*, he may bring the action. It will lie in favor of a guardian: (*Femsler* v. *Moyer*, 3 *Watts & Serg.* 416:) an uncle or aunt who has brought up a niece: (*Manvell* v. *Thomson*, 2 *Car. & Pay.* 303; *Edmondson* v. *Machell*, 2 *T. R.* 4:) or one who has adopted and bred up the daughter of a deceased friend. (*Irwin* v. *Dearman*, 11 *East*, 23; *Ingersoll* v. *Jones*, 5 *Barb.* 661.) *Moritz* v. *Garnhart*, (7 *Watts*, 302,) was an action by the putative grandfather of an illegitimate child, for the abduction of the child, and has little to do with the present inquiry.

In *Sargent* v. *Denison*, (5 *Cow.* 106,) the action was brought by the mother, after the death of her husband, for debauching her minor daughter, who at the time of the injury was in the service of a third person, to whom she was bound by indenture; but before the child was born the indentures were cancelled, and the daughter returned to the service of her mother. It was said that the action would lie; but the case went off [46] on another ground, and the point was not necessarily decided.

The *dicta* in that case cannot be supported without an entire departure from the principle on which the action rests. There was no relation of master and servant between the plaintiff and the daughter, either actual or constructive at the time of the seduction. On the contrary, the daughter was then actually the servant of another, who had a legal right to her services: and in that respect the case not only stands alone, and wholly unsupported, but it is in conflict with the whole current of authority on the subject. If the daughter had not been bound to the third person, there would still have been an insuperable difficulty in the fact that she did not live with her mother at the time of the seduction; for at the common law the mother has not, like the father, a legal right to the services of a minor child; and there is consequently no ground for implying the relation of master and servant between them. The relation must be actual, or it can not exist. The case of *South* v. *Denniston*, (2 *Watts*, 474,) is directly in point. The action was brought by the mother for the seduction of her minor daughter, who lived with the defendant's father at the time of the injury, but returned to the service of her mother, and was attended by her during the lying-in sickness. It was held that the action could not be supported, because there was no actual, and could be no constructive relation of master and servant at the time of the seduction. In *Coon* v. *Moffett*, (2 *Penningt.* 583,) the seduction was in the lifetime of the father, but the child was not born until after his death: the mother paid the lying-in expenses of the daughter; and two judges, against Chief Justice Kirkpatrick, were of opinion that the mother might maintain an action; but the case was disposed of on another ground. The same question arose in *Logan* v. *Murray*, (6 *Serg. & Raw.* 175,) and it was adjudged that the mother could not maintain an action, because the daughter was not in her service, but the service of the father, at the time of the seduction. *Davies* v. *Williams*, (10 *Ad. & Ellis. N. S.* 725,) is another case in point. The daughter was seduced by the defendant while in his service, and in consequence of her pregnancy, returned to her mother, who maintained her until after her confinement. Lord

Denman ordered a nonsuit in an action brought by the mother, which was confirmed by the whole court. Patteson, J. said, " to support such an action the defendant's act must have been wrongful to the plaintiff;" and he asks, " how is the seduction wrongful to the plaintiff unless the relation of master and servant subsists at the time of the seduction ?" Colridge, J. added : " where such relation is contracted after the seduction, the state of the case is, that the master employs a servant who is less valuable by reason of an antecedent occurrence : there is no consequential injury of which he can complain." And in relation to the same point, it was well remarked by Gibson, C. J. in *South* v. *Denniston*, (2 *Watts*, 477,) " that a party cannot entitle himself to an action for what was no wrong to him, by employing a disabled servant. An action for loss of service would certainly not lie for beating one who was not in the plaintiff's service at the time, because it would be esteemed an act of folly in him to employ an unfit person ; and it must necessarily be indifferent, in point of principle, whether the unfitness was caused by beating, or by impregnation." It is quite clear that the reasoning of Mr. Justice Sutherland in *Sargent* v. *Denison*, can not be supported. And I will mention here, that the case of *Ingersoll* v. *Jones*, (5 *Barb*. 661,) was open to the objection that the seduction took place while the girl was in the service of a third person, and the plaintiff— not being her father—had no legal right to her services at the time. But it does not appear that the point was made by the bill of exceptions ; and the case can not therefore be regarded as an authority on the question under consideration. Several attempts have recently been made in England to maintain the action upon other grounds than those which have been mentioned ; but they have all failed, as will be seen by referring to the following cases. (*Harris* v. *Butler*, 2 *Mee. & W.* 539 ; *Blaymire* v. *Halfey*, 6 *Id.* 55 ; *Grinnell* v. *Wells*, 7 *Man. & Gran.* 1033 ; 8 *Scott's N. R.* 741, *S. C.* ; *Eager* v. *Grimwood*, 1 *Welsby, Hurl. & Gord.* 61 ; *and see Satterthwaite* v. *Dewhurst*, 4 [48] *Doug.* 315.) Our cases stand on the same foundation, with only this difference, that we go further than the English courts

in making out the constructive relation of master and servant, and hold that it may exist for the purposes of this action, although the daughter was in the service of a third person at the time of the seduction, provided the case be such that the father then had a legal right to her services, and might have commanded them at pleasure.

It is but natural that an upright magistrate should feel great indignation towards a seducer, and should sympathize warmly with those who have been injured ; and judges have often regretted that the right to sue was confined within such narrow limits. It seems even to have been thought a reproach to our law that somebody should not have an action whenever an unmarried woman is gotten with child. If this be a just view of the matter, the reproach does not rest upon the courts, but on the legislature, whose office and duty it is to make and amend the laws. The courts went to the full length of their powers when they held that the relation of parent and child might be regarded as that of master and servant for the purpose of supporting this class of actions.

Now what is this case ? The plaintiff was not the natural parent, but the step-father of Gitty Ellen McGarey ; having married her mother when the daughter was five years old. Gitty lived in the plaintiff's family until she was about seventeen years old, and then left, without any intention, so far as appears, of ever returning to live there again. The judge would not allow the defendant's counsel to ask the girl whether there was any *animus revertendi,* and for all the purposes of this case, we must assume that there was none. She left on account of a difficulty with the plaintiff, which resulted in his telling her to leave his house ; and she did not return, except for the purpose of visiting her mother, until five months after the seduction. At the time the child was begotten, she was in the service of a third person, and had been in the service of persons other than the plaintiff more than a year and a half immediately preceding that time. When she was five months gone in [49] pregnancy, she returned to live with the plaintiff, at his request, and he paid her six shillings a week for her services

down to the time of confinement. Upon this case, it is entirely clear that the relation of master and servant did not exist between the plaintiff and the girl at the time of the seduction. There was no such relation in fact; and as the plaintiff was neither bound to support his step-daughter, nor had any right to her services; (*Tubb* v. *Harrison*, 4 *T. Rep.* 118; *Cooper* v. *Martin*, 4 *East*, 76; *Overseers of Poor* v. *Cox*, 7 *Cowen*, 235; *Gay* v. *Ballou*, 4 *Wend.* 403; *Freto* v. *Brown*, 4 *Mass.* 575;)(*a*) there was no ground whatever for implying the relation, as there might have been, had the action been brought by the father by nature. Any other person who had hired the girl when in a state of pregnancy, would have just as good a right to sue as the plaintiff; and we can not allow this action to succeed without a plain departure from settled principles.

The difficulty was felt by the plaintiff's counsel, and it was pretty plainly intimated that we ought to legislate for this case. If the prerogative of making laws had been entrusted to the courts, there is not much probability that I should exercise it in such a way as would answer the plaintiff's purpose. I might think that private virtue and public morals would more certainly be promoted by restricting, than by extending, the use of this class of actions. It is worthy of grave consideration whether it would not be well for the legislature to restore the old rule, by limiting the recovery to the value of the services lost, and the amount of expenses incurred in consequence of the injury. Parents would not be less watchful over their daughters for knowing that they could not make a pecuniary profit by their dishonor: and females would not be less chaste if they knew that disgrace and shame, without any reward, would certainly follow transgression. Although it is true that money, however large the amount, will not always heal the wound, it can hardly be doubted that the heavy verdicts which are now usually given in seduction cases may sometimes prove a snare to both parent and child. The seducer deserves [50] the severest censure; but if he is charged with anything more

(*a*) See also *Williams* v. *Hutchinson*, (3 *Comst.* 312.)

than the pecuniary damages resulting to the parent, it is well worthy of consideration whether the matter should not be regarded as a public, rather than a private wrong. And if want of chastity is treated as a crime in one sex, it may be worth while to inquire whether it should not be so treated in the other. I know that our legislature, in the act to punish seduction as a crime, has not only taken a different view of the matter, but has allowed the polluted woman to be a witness against her associate in the transgression. (*Stat.* 1848, *ch.* 111.) But it is very questionable whether such laws will do any good; and those who have read the history of Joseph can not but fear that they may do great harm. I am not yet a convert to the modern doctrine that woman's virtue should be fenced about by penal statutes. If it has no higher and more holy shield, it certainly will not withstand the trial. If such laws were not intended for good, I should regard them as an insult to the sex.

There is nothing in this particular case which should tempt us to amend the law, if we had the right to do it, for the purpose of upholding the recovery. Although Gitty was a witness on the trial, there is not a particle of evidence to show that there was any thing like seduction in the case. For aught that appears, she may have been as much in fault as the defendant. And besides, she has no title to any part of the recovery; it all belongs to the plaintiff. There is no tie of blood between him and the girl; and neither owes any duty or obligation to the other. He has not lost a farthing in point of estate; and if we may judge from his conduct in dismissing the girl from his house, he has probably suffered very little in point of feeling. The wrong of which he complains was not done to him, his child, or his servant. He was in no condition to sue; and has done nothing to gain a title to the action but to employ a pregnant woman, and pay her stipulated wages. And yet he has not only been allowed to recover, but he has a verdict for a thousand dollars damages. The money belongs to him: he is under no obligation to share it with the girl, or to do any thing [51] for her support. If such a verdict may be had in such a case,

the hiring of a pregnant female into one's service will be a profitable business.

The recovery is as clearly wrong in point of principle, as it is erroneous in point of law.

Judgment reversed.