# Arthurs' Appeal.

Grant
1g      55
40SC 1137

1. The Orphans' Court has no right to appoint a guardian for an infant who is over the age of fourteen, unless from some cause he is incompetent to exercise his right of choice.

2. The Orphans' Court has no right to refuse to a minor of the age of fourteen, the privilege of choosing a guardian for himself unless upon good cause.

3. In Pennsylvania, the guardian of the person and estate is substituted for guardians *in socage* and *for nurture*, and performs the duties of both.

4. In England and in Pennsylvania, the testamentary guardian continues until the ward is twenty-one.

APPEAL by George Arthurs from the decree of the Orphans' Court of Allegheny county, allowing Sarah Ferguson to choose a guardian of her estate, and discharging the appellant from the further guardianship thereof, and requiring him to surrender and deliver to Joseph S. Morrison, a guardian chosen by the ward and approved by the court, the property, rights, credits, *choses in action*, and effects, of the said Sarah.

George Arthurs, the appellant was appointed guardian of Sarah Montgomery, when she was of the age of ten years.    When she arrived at the age of nineteen, having been married to Matthew Ferguson, she petitioned the court to discharge the said George Arthurs from the guardianship, and allow her to choose a guar-

[Arthurs' Appeal.]

dian. Various reasons were stated in the petition, but the principal allegation was that she and her guardian were not on good terms, and there existed between them "irreconcilable difficulties," which rendered it impracticable to have any amicable communication with him, which was essential to her interests and welfare.

George Arthurs, the guardian, resisted the application, and showed by testimony that he had managed the estate well, and alleged that there was no bad feeling on his part towards his ward.

Upon the hearing, the court refused to dismiss the guardian, because no reasons had been shown for his dismissal, and in justice to him, they declined to grant the prayer of the petitioner. Subsequently a petition was presented, based upon the *naked legal right* of the ward to choose her guardian, at any time after she had arrived at the age of fourteen years. This was also resisted by George Arthurs, but the court overruled the objections, and the petitioner made choice of Joseph S. Morrison, who was approved by the court, and George Arthurs required to transfer her estate to him, which approval and order is the error assigned.

*Woods, Eyster* and *Loomis*, attorneys for appellant, referred to *Shilling's Appeal*, 1 Barr, 90; *Robinson* v. *Zollinger*, 9 Watts, 171.

*Stanton*, for appellee, referred to Bingham on Infancy, 156; *Graham's Appeal*, 1 Dall. 136; Co. Lit. 83; *Robinson* v. *Zollinger*, 9 Watts, 171; *Shilling's Appeal*, 1 Barr, 90.

The opinion of the court was delivered November 2, 1854, by
LEWIS, J.—At common law, the guardian *for nurture* took charge of the person and personal estate; but if the ward held real estate by socage tenure, the guardian took the charge of the body and lands. So long as the minor was too young to exercise discretion, the law designated who his guardians should be. But he was held to be at years of "discretion" as soon as he was fourteen; and at that age, therefore, he had the right to "oust his guardian and call him to account for the rents," and to choose a guardian for himself. 2 Blackst. 88. It followed that neither of these two kinds of guardians continued longer than until the ward arrived at the age of fourteen. 1 Bl. 462. These were indubitably the rights of guardian and ward until the statute which turned almost all the lands in England into socage tenures, gave to the father a power by will to appoint a guardian till his child should attain the age of *twenty-one*. 12 Car. II., c. 24. So that a father, by virtue of this statute, might by will delegate to a stranger a more extensive power than he possessed

[Arthurs' Appeal.]

himself. 2 Bl. 89, note 10. In Pennsylvania, instead of the guardians being designated by law, the Orphans' Court is directed to *appoint* them "for such as they shall judge too young to choose for themselves," and to "*admit*" others "when and as often as there shall be occasion to make choice of guardians." Act 29th March, 1832. This act, instead of abolishing the rights of minors of the age of fourteen to choose guardians for themselves, plainly recognized them. In judging upon the question, who are "too young to choose for themselves," the court is, of course, bound by the rules of the common law. It is therefore clear that the Orphans' Court has no right whatever to appoint a guardian for one who is over fourteen, unless from some cause he is incompetent to exercise his rights. Nor has that court the right to refuse to the minor of fourteen the privilege of choosing a guardian for himself, unless upon good cause. The right of choice, it is true, is to be exercised under the supervision of the Orphans' Court, but that supervision is designed for the benefit of the minor, and not for the profit of the guardian; and unless the court is satisfied that the choice of the minor is detrimental to his interests, or contrary to law, he should be permitted to exercise his right.

In this State, the guardian of the person and estate is substituted for guardians *in socage* and *for nurture*, and performs the duties of both. The former is subject to the rules which governed the latter, according to the common law, except so far as they are changed by usage or by statute. Under the English statute, and also under our own, the testamentary guardian continues until the ward is twenty-one. But the legislature, in thus fixing the duration of the testamentary guardian, and leaving those appointed by the Orphans' Court without any sure provision, plainly manifested an intention to leave the latter, in this respect, as they stood at common law.

The statutory regulations for removing guardians for misconduct or other causes, were designed to restrict their power, and to secure still further the rights of the ward. Upon no sound principle of construction can they be expounded so as to enlarge the powers of the one and abridge the rights of the other. Statutes in derogation of common law rights are construed strictly. The regulations for removing guardians for cause may have full operation upon those appointed by the court in all cases where defaults happen before the ward is fourteen; and upon those chosen by the ward as often as good cause arises afterwards, and before he is twenty-one. No one has a right to demand the appointment. No one can be compelled to serve after he is appointed. Nor can any one claim a right to the office as vested in himself, after the ward, at years of discretion, legally manifests his determination to oust him by the choice of another. In the case of

an executor or administrator, the appointment must be given by the Register *to the person entitled.* It is demandable *as a matter of right,* and cannot be taken away without cause shown. 7 W. & S. 401 ; 2 W. 175. But a guardian stands upon a footing entirely different, and the power given to the Orphans' Court to remove him, although in the section which gives the same control over executors and administrators, does not take away the rights of the minor, as recognized and established so long that "the memory of man runneth not to the contrary."

The denial of the right of the minor in 1853 is no reason for refusing to recognize it 1854; and the decree acquitting the guardian of the charges made against him furnishes no better ground for it.

The exception to the bond of Joseph Morrison, that "it is untrue on the face of it," and that "it is really no security at all," without specifying the particulars in which it is defective, is not such a specification of error as demands our consideration. The bond is marked, approved 6th May, 1854, and, in affirmance of the decree, it is our duty to presume that it was delivered at that time with the assent of all the parties to it. Neither the date of the bond nor the misnomer of the ward is sufficient to repel that presumption. Besides, as the Orphans' Court had authority to approve of the selection of Joseph S. Morrison as guardian, without requiring any security whatever, we do not think the informalities of the bond present sufficient ground for reversing their decree. As the appointment of Morrison is valid without security, and the discharge of George Arthurs is equally valid, notwithstanding informalities in the bond of Morrison, we do not see how the interest of Arthurs is affected by them, or what right he has to intermeddle with that question. It ought to be sufficient for him to know that his care over the interests of the ward is no longer desired, and that his rights as well as his duties as guardian have terminated.

In the eleven exceptions to the decree, there is nothing requiring our further consideration, and the decree of the Orphans' Court is to be affirmed.

Decree affirmed.