# In the Court of Common Pleas of Schuylkill County.

## THE COM. OF PENN'A ex rel. NICHOLAS W. WALEISA *v.* ISRAEL WALEISA.

### *Habeas Corpus.*

A guardian of the person of an illegitimate child is entitled to its custody in preference to its putative father.

Opinion delivered by

WALKER, J. This is a habeas corpus issued upon the petition of the relator, setting forth that his son, Irwin Nicholas Waleisa (a boy of five years old) is deprived of his liberty by his grandfather, the defendant, whom he prays may be produced before the court.

The respondent answers that the boy is the illegitimate child of his daughter Mary who died about the 23. March, 1874,. that the child is in delicate health, requiring great care and constant attention from his grandmother, with whom he has lived since his birth, and that the respondent, in April last, was appointed by the Orphans' Court, guardian of the person and estate of the child.

At the hearing of this case two points were raised.

1st. That the child being illegitimate, the putative father has no legal right to him.

2nd. That the respondent having been appointed guardian of his *person* and estate, is legally entitled to his custody.

1st. At common law a bastard was *filius nullius*, he had no inheritable blood in him, and he could have no heirs except of his own body. The civil law even denied him maintenance under certain circumstances 1 Blackstone, 458.

If he died seized of land, without issue and without making a will, it escheated to the King, 1 Lord Raymond 1152.

The legal duty of the putative father extended no further than maintenance—There is a marked legal distinction between the duties and rights of parents of legitimate and illegitimate children.

In the Com. v. Anderson, 1 Ashmead 55, the Court held that the putative father of an illegitimate child is entitled to the custody of the child as against all but his mother. See also Moretz v. Garnhart 7 Watts,. 302 ; Rex v. Comforth 2 Strange 1162 ; Wright v. Wright, 2 Mass. 109.

In cases of fornication and bastardy, no responsibility rests upon the putative father, beyond the consequence of his conviction—and no reciprocal right springs from the duty imposed on him by law : Directors of the poor v Dungan 14 P. F. S. 403. See Strangaway v. Robinson 4 Taunt. 498.

As the case does not turn upon the decision of this point, I prefer to adopt the per curiam opinion of the Supreme Court, in the Commonwealth v. Fee 6 S. & R. 256, to wit : "We give no opinion upon the gen-

eral question of the right of a putative father to the custody of his child.''

2nd. As to the effect of the appointment of guardian (by the Orphans' Court) with reference to the custody of the child.

This is the sole question involved here. The power and reciprocal duty of guardian and ward is the same *pro tempore* as that of a father and child : 1 Blackstone Com. 462 ; 9 Harris 331.

· In England the King is the universal guardian of infants—who delegates it to the Lord Chancellor, and by virtue of this power the Chancellor may appoint guardians for· such infants as are without them, 1 Blackstone Com. 462 and note 8.

Under the act of 29 March, 1832 Section 5, (Purdon's Digest 411. Pl. 31) the Orphans' Court of the county where the infant resides, is given the care of his person and his estate—and the power to appoint guardians for those too young to make choice for themselves—the age of 14, being considered the age of legal discretion ; Lee's Appeal 3 C. 229: Authur's Appeal, 1 Grant 55.

In Sensemans' appeal 9 Harris 331, it is decided that the appointment of a guardian is a *final* decision upon the *right to the care and control of the person of the minor.*

In Pennsylvania, the guardian of the person and the estate is substituted for guardian in *socage* and for *nurture* and performs the duties of both. Authurs' Appeal 1 Grant 55. And such guardian stands in relation to his ward *in loco parentis*. Fernsler v. Moyer 3 W..& S. 416. In Spring v. Woodworth 4 Allen 321, the court says ''No doubt as long as the child continues within his jurisdiction, the guardian appointed in the courts of this State would have the *exclusive right* to the custody of his person.''

The guardian for nurture in England is entitled to the custody of the child. Regina v. Clark, 40 Eng. Law and Eq. 109.

In a contest between a putative father of an illegitimate child and the legally appointed guardian of his person, I have no hesitation in awarding the custody of the child to the guardian.

The extent to which the authorities go, is to give him the right to the custody of his child next to its mother, as against strangers—but I have failed to find any decision which gives him that right against the guardian of the child's person.

If the effect of such an appointment is to give the guardian the control and custody of the child, then it is evident that that order cannot be annulled or set aside in this collateral proceeding. No principle of law is better established than this.

For these reasons (in which Judge Green, who heard the argument with me, concurs) the application should be denied and the child is hereby remanded to the custody of his guardian, Israel Waleisa.