ZALMON CERTWELL, PLAINTIFF, v. SAMUEL HOYT, DEFENDANT.

Hun.
6h 575
50ad105

*Seduction — right of grandfather to maintain action for.*

A grandfather who, at the request of the deceased parents of an infant female, has assumed the obligations of a parent in respect to her care and management, can maintain an action for her seduction, although she was living away from him in the service of the defendant, appropriating the wages received to her own use, at the time the injury occurred. (MERWIN, J., dissenting.)

Motion for a new trial, on exceptions directed to be heard in the first instance at the General Term, after a nonsuit ordered by the court.

# 576 CERTWELL v. HOYT.

The action is brought by the plaintiff, for damages for the seduction by defendant of the plaintiff's minor grandchild, and was tried at the Jefferson Circuit, in May 1874. Both parents of the child died when she was about a year old. The plaintiff, at the request of the child's mother, before the mother's death and subsequent to the death of the father, took her to take care of, and did from that time adopt and treat her as his own child, and she called the plaintiff and his wife father and mother.

For about two years before the occurrence complained of, the girl had worked out at divers places, receiving her wages which were applied towards her clothing or other support. In June, 1873, she went to work for defendant, and was soon after, at his house, seduced by him and got with child. Before her confinement she returned to plaintiff's house, and was there confined. When she left the plaintiff to go out at work, she had the intention of returning, and did, occasionally, go back.

At the close of the plaintiff's evidence, the court granted a nonsuit, on the ground that the plaintiff, at the time of the seduction, had not the right to command the services of the girl.

*N. Whiting*, for the plaintiff.

*C. H. Watts*, for the defendant.

GILBERT, J.:

This is an action for seduction. The plaintiff is the grandfather of the female seduced. When seduced she was an infant eighteen years old. Her father died when she was fourteen months old, and her mother died two months afterward. Her mother, shortly before she died, requested the plaintiff to take the infant and take care of her. Accordingly the plaintiff brought the infant home, and she remained in his family as a daughter from that time onward until she became fifteen years old. She then began going out to service with the assent of the plaintiff, still, however, treating the plaintiff's house as her home, and returning to it when not engaged elsewhere. At the time of the seduction she was in the defendant's employment as a servant. Her wages which she received for her services away from the plaintiff's house were appropriated by her to her own use. At the trial the plaintiff was nonsuited. The

question which we have to decide is, whether a grandfather who has assumed the obligations of a parent in respect to the care and maintenance of an infant female, can maintain an action for her seduction, although she was living away from him, and was in the service of the defendant, at the time the injury occured.

No doubt the father, or after his death the mother, of the infant might maintain the action under such circumstances. That has often been adjudged in favor of the father, and the rule, as to him, is conclusively settled. In *Clark* v. *Fitch* (2 Wend., 459), it was held that a father liable to a third person for the expenses of the lying-in of a daughter, who had been seduced, might maintain the action, although the daughter was the servant *de facto* of another, and the father had permitted her to leave his house, had relinquished all claim to her services, and had incurred no *actual* expense. In *Mulvehall* v. *Millward* (1 Kern., 343), a recovery by a father was allowed where the daughter left her father's and went to work for the defendant, and was seduced by him while in his employment, and remained absent from home until after her confinement and recovery, and the father incurred no expenses on her account. The principle of these cases was emphatically approved in *Gray* v. *Durland* (51 N. Y., 424). The Court of Appeals has, also, recently established the same right in favor of the mother, after the father's death. (*Furman* v. *Van Sise*, 56 N. Y., 435.)

This right is put upon the general ground that the parent is entitled to the services of the child, and the injury occasions a loss of that service; in other words, that the legal relation of master and servant subsists between them, and that for an injury to the servant, which disables her from rendering to the master that service which is his due, the master can recover. (Cases, *supra*.)

Persons, whether blood relatives or not, who stand *in loco parentis* to the infant, with whom the infant lived at the time of her seduction, have the same right; *e. g.*, an aunt (*Manvell* v. *Thomson*, 2 C. & P., 303), a step-father (*Bracy* v. *Kibbe*, 31 Barb., 273), and a foster-father. (*Irwin* v. *Dearman* 11 East, 23.) The principle of these cases is approved in *Gray* v. *Durland* (*supra*).

In *Lampman* v. *Hammond* (3 N. Y. S. C. [T. & C.], 293), the same right was accorded to a mother who had remarried. In England, however, if a daughter seduced did not, at the time of

the injury, reside with her father, but was living away from home, in the service of another person, the father has no ground of action, unless the person with whom she was living inveigled her away from home, for the very purpose of seducing her. (*Dean* v. *Peel*, 5 East, 47; *Blaymire* v. *Haley*, 6 M. & W., 55; *Thompson* v. *Ross*, 5 H. & N., 16.) But this rule has been exploded in this State. (*Mulvehall* v. *Millward*, *supra*.) Whether absence in the service of another bars the right of recovery of persons who are not parents, but merely stand *in loco parentis* to the infant, has not yet been determined in this State, to my knowledge. That is really the question before us. The case of *Bartley* v. *Richtmyer* comes nearest to an adjudication of that question, but is not in point. The plaintiff in that case was the stepfather of the female seduced. He had discarded her, and she had left his house without, as the court assumed, any *animus revertendi*. He did not, therefore, stand *in loco parentis* to her. The right of the plaintiff to maintain the action, if the infant female had been a member of his family at the time of her seduction, being established, did such right continue while the infant was away from home in the service of the defendant? Why should it not, as well as that of a father and of a widowed mother? It is said that the right of a grandfather, who, upon the death of both parents of the infant, has stepped into the father's place, and assumed all his duties and obligations, ceases when the infant leaves his house and engages in the service of another. We cannot assent to that. Viewed in the light of justice and common sense, his right is certainly as strong as that of a widowed mother. The same considerations which support the right of one are equally cogent to maintain a claim of the same right by the other. Indeed, I can imagine no sufficient reason for applying to the plaintiff, who became practically a father by his adoption of the infant, any different rule in an action of this kind than would have been applied to the natural father himself. The only reason suggested is, that the plaintiff has no legal right to the services of the infant, because he is under no legal obligations to provide for her care and maintenance. He may not be under the same obligations to the State, but we are not willing to concede, that he is not *quoad* the infant herself. But the better answer is, that the right of the

natural father to the child's services is founded, not upon a positive legal obligation to furnish her with care and maintenance, but solely upon his duty as a parent to do those acts. The father's right to the services of his child has always been recognized and enforced by the common law, although by the same law no positive legal obligation was imposed on the father to maintain the child, but that duty was left to be enforced by those impulses of affection which nature has implanted in the breast of every father toward his offspring. Such obligation was first declared by a statute passed for the indemnity of the public only. (43 Eliz., ch. 2, § 6.) This statute imposed no obligation upon the parent which the child, personally or by a next friend might enforce, nor does a similar statute of our own. (1 R. S., 614, § 1.) Each forms a part of a system whereby provision is made for the maintenance of the poor, by rendering children liable for expenses incurred by the State in the maintenance of parents, as well as by imposing a similar liability on parents; the only object of them being the protection of the State against the expense of supporting paupers. The duty of the father to maintain the child, however, is and always has been recognized in some way, and in some degree, in all civilized countries. The infant cannot support herself; others must supply her with the means of subsistence; and the only question has ever been, whether the State shall do this or her parent. No doubt it is the duty of the parent to do it, but the duty is not made a legal obligation by the common law. The cases not founded upon the statute, in which the duty has been enforced, rest upon the ground of agency. (1 Pars. Cont., bk. 1, ch. 17, § 2.) Broom, in his Commentaries on the Laws of England, remarks: " It has by some been thought that there is a legal obligation imposed upon every man to provide for his children; but the common law of England seems never to have afforded any means of enforcing such duty, if it existed." (1 Broom Com. Law, 551.) Blackstone says this duty is a principle of natural law. (1 Com., 447; see also, *Mortimore* v. *Wright*, 6 M. & W., 482; *Shelton* v. *Springett*, 11 C. B., 452; *Cromwell* v. *Benjamin*, 41 Barb., 558, 561; *Raymond* v. *Loyl*, 10 id., 483; *Chilcott* v. *Trimble*, 13 id., 502.) In these cases it was held that, at common law, there is no legal obligation on a parent to maintain his child. It is obvious that it would be

scarcely possible for a court of law to interfere with the details of the father's management, unless it should be cruel or immoral. The obligation, if it existed, could not be practically enforced, except for the public indemnity, by any better means than by permitting others to supply necessaries for the child, when the father had abandoned his duty, and compelling the father to pay for them upon the ground of an implied authority given to the child. The same reasons which render the father liable in such a case, have been held sufficient to establish the same liability against a step-father, where he takes the wife's child, and the father of a bastard, where he takes the illegitimate child into his own house, for by that act he holds the child out to the world as part of his family, and is considered as standing *in loco parentis*. (*Stone* v. *Carr*, 3 Esp., 1; *Cooper* v. *Martin*, 4 East, 82, per Lord ELLENBOROUGH; 2 Kent Com., 192.) Upon this principle, the infant in this case, while living with the plaintiff, no doubt might have made him liable for necessaries.

The right to the services of a child, then, results not from any positive obligation imposed by the common law on the person claiming such right, but from the moral duty enjoined by the law of nature; which duty the common law recognized by giving to third persons an action to recover for necessaries furnished the child. Whenever the same duty of furnishing maintenance enjoined by equivalent sanctions exists, the correlative right to the services ought to be awarded. It was upon that principle, that courts have sustained an action by a father for the seduction of a child who was above age, and of a child who was married. (*Lipe* v. *Eisenlerd, supra; Harper* v. *Luffkin*, 7 B. & C., 387.) For if there can be no loss of service unless a legal obligation to maintain the child exists, these cases were wrongly decided. We are not at liberty to say that. We think the sensible rule is the one already intimated, namely, that he who has assumed and faithfully performed the duties of a father, is entitled to the rights which the law gives to the father. Such was the principle decided in many of the cases cited.

The plaintiff should be allowed to maintain this action upon another ground. In *Furman* v. *Van Sise (supra)*, it was held that the mother was entitled to maintain the action because she took

care of and provided for her daughter during her confinement, in performance of the obligation imposed upon the mother by law. The plaintiff did the same acts for his granddaughter during her confinement, in performance of the obligation which he had assumed as her foster-father. The pecuniary injury in this respect, resulting from the seduction, was as direct in one case as in the other. So long as the right to maintain an action for seduction shall be permitted to rest upon the flimsy fiction of a loss of ser-vice, it seems to us that no just distinction can be made between a parent and a grandfather who adopted the child in infancy, after the death of both her parents, and who then assumed, and has always performed the duties and obligations of a parent. ( *Williams* v. *Hutchinson*, 3 N. Y., 321.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

SMITH, J., concurs upon the ground that the gift by the mother, just before her decease — the father having previously died — of the seduced, when an infant, to her grandfather, and his acceptance of the gift and assumption of the duty and charge of a parent toward said infant, and bringing her up in his family as if she was his own child, was an adoption of said infant as his own child, and vested in him all the rights of a parent to said infant.

MERWIN, J. (dissenting):

The plaintiff to maintain this action relies upon the principles laid down in *Ingersoll* v. *Jones* (5 Barb., 661), *Bartley* v. *Richtmyer* (2 id., 182), and *Bracy* v. *Kibbe* (31 id., 273). These cases, in general terms, lay down the doctrine that a person in *loco parentis* can maintain the action to the same extent as the natural parent could. But subsequent adjudications have modified that rule. The case of *Bartley* v. *Richtmyer* was reversed in Court of Appeals (4 Comst., 38), the court holding that either the relation of master and servant must, in fact, exist at the time of the seduction, or that the natural relation must be such as to entitle the plaintiff to command the services of the seduced. In that case the plaintiff was the stepfather of the girl, and at the time of the seduction she was engaged in the service of the defendant's father,

at stipulated wages on her own account, she then being nineteen years old. In *Ingersoll* v. *Jones* the seduced was the adopted child of plaintiff, who was not otherwise related to her, and she was at the time in the service of a third party. The General Term in the eighth district held the action maintainable, but it is opposed to the principle held in *Bartley* v. *Richtmyer*, and is there expressly repudiated by BRONSON, J. (Page 47.) In the case of *Bracy* v. *Kibbe* (*supra*), the action was by the adopted parent, but the child was at the time in his actual service, and the same was the case in *Irwin* v. *Dearman* (11 East, 23).

In *Lipe* v. *Eisenlerd* (32 N. Y., 229), the action was held maintainable by the father of an adult daughter, on the ground that the relation of master and servant existed under an implied contract, although the arrangement had no permanent binding force, and a temporary absence of the daughter at the time of the injury did not affect the relation. If it exist in fact, and the immediate parties are acting under it at the time of the seduction, however imperfect its obligation may be, the defendant, who by his wrongful act has interrupted it, cannot set up that it was liable to be revoked at any time without the consent of the master. (Per DENIO, Ch. J., page 234.) In *Furman* v. *Van Sise* (56 N. Y., 435), it was held that the mother of a minor daughter, the father being dead, could maintain the action, though the seduction occurred while the child was in the employment of another, and she subsequently returned to plaintiff's house and was cared for by her. The ground of the decision was that the mother, both by reason of the natural relation as well as by force of the statutes, was under legal obligation to support her minor child, and could therefore command her services.

So that, as the cases now stand, the plaintiff must show either that the relation of master and servant existed at the time of the seduction, or that he, as grandfather or adopted father could command her services. There was no evidence sufficient to sustain a finding by the jury that the relation of master and servant in fact existed between the plaintiff and the girl. She had left his home about two years before, had made her own bargains and received her own wages. Her absence cannot be said to be a temporary one, although at some time she intended to return. The only question then is, could the plaintiff command, or was he entitled to her

services? That may depend on whether he is bound to support her. In England, by the statute 43 Elizabeth (1601), a grandfather of sufficient ability is bound to support his indigent grandchild, and this law is, I believe, still in force. (9 L. R. [Q. B.], 254.) The law is the same in New Hampshire, Massachusetts, Pennsylvania, and perhaps some other of the States. In this State, prior to the Revised Statutes, a similar law was in force (1 R L. of 1813, 286, § 21), but since 1829 the statute has not imposed such obligation, and I know of no authority holding that the grandfather or adopted father of a child, not at the time living with him, is liable for its support. The change by the Revised Statutes indicated the intention of the law-makers on the subject. The paternal grandfather, as in this case, would be the guardian by nature and in socage, and ordinarily, this would entitle him to the custody as against strangers. But if such custody has been parted with voluntarily on both sides, as in this case, it can draw with it no right to services or obligation to support. I am not prepared to hold that the grandfather, as such, is entitled to the services of his minor grandchild or is legally bound to support her. The case of *Moritz* v. *Garnhart* (7 Watts, 302), was an action by a grandfather for the abduction of his grandchild, who then lived with him and was being brought up by him, and the relation of master and servant was implied. That does not reach the present case.

I think this action cannot be maintained.

Present — SMITH, GILBERT and MERWIN, JJ.

Judgment reversed and new trial granted, costs to abide event.