BOLTON v. MILLER.

Suit by a father for the seduction of his daughter. The second paragraph of the answer alleged, that the daughter was not, at, &c., the plaintiff's servant, but owed and was then rendering service to the defendant, as his apprentice, by virtue of a written agreement, dated *January* 31, 1845. The agreement, which was signed by the plaintiff and defendant, but was without seal and without acknowledgment, was set out in full. It stipulated that the daughter, then nine years old, should be bound to the defendant, as his apprentice, to learn the duties of housekeeping, for nine years from the 16th of *March*, 1844. In consideration of which the defendant agreed to give the daughter a year's schooling, and at the expiration of the term, to give her certain specified articles of household furniture. The answer further alleged that said agreement had not expired at the time of the seduction, nor at the birth of the child; that at the time the child was born, the daughter was living with the defendant, as his servant, and that afterwards the contract was canceled by the mutual consent of the parties.

*Held,* that the instrument was not binding as an indenture of apprenticeship, under the R. S. 1843.

*Held,* also, that the instrument did not give the defendant a right to control the daughter's person, nor to compel her return.

*Held,* also, that the agreement operated merely as a license to the daughter to appropriate her time and wages to her own use, until she was eighteen years old; and that it was competent for the father to revoke the license, and reclaim her person at pleasure, being answerable to the defendant for a breach of the agreement, if she was taken away without just cause.

*Held,* also, therefore, that the paragraph was insufficient on demurrer.

The relation of master and servant exists constructively between the father and his infant daughter, although she is actually in the service of another, provided the father has a right, at any time, to reclaim her services.

A demurrer was sustained to a paragraph of an answer, which set out, by way of defence, a written agreement. The agreement was admissible in evidence upon the trial of issues raised by other paragraphs. *Held,* (the contrary not appearing,) that the defendant must be presumed to have had the full benefit of the agreement.

A defendant can not allege for error the overruling of a demurrer, where his defence was not prejudiced thereby.

In an action by a father for the seduction of his daughter, a seeming insensibility of the father to his daughter's disgrace, can not be shown in mitigation of damages.

APPEAL from the *Vigo* Circuit Court.

STUART, J.—*Miller* brought an action against *Bolton* for the seduction of his infant daughter. Verdict for *Miller*, assessing his damages at 1,100 dollars. *Bolton* appeals.

The declaration, filed before the revised statutes took effect, is in the old form. The subsequent proceedings are under the new practice.

On behalf of *Bolton* it is insisted that the Court below erred—

1. In sustaining the demurrer to the second paragraph of the answer.

2. In certain instructions given to the jury.

3. In overruling the motion for a new trial on the fourth reason assigned, namely, newly discovered evidence.

The other causes filed on moving for a new trial we understand to be either substantially embraced in the above, or abandoned by counsel.

First, then, it is urged that the Court erred in sustaining the demurrer to the second paragraph of the answer.

The paragraph to which the demurrer was thus sustained, sets up that *Mary Miller* was not, at, &c., the servant of the plaintiff, but owed and was then rendering service to the defendant, *Bolton*, as his apprentice, by virtue of a written agreement, dated *January* 31, 1845. The agreement, signed by *Bolton* and *Miller*, the father, but without seal and without acknowledgment, is set out in full. It stipulates that *Mary*, then nine years old, shall be bound to *Bolton*, as his apprentice, to learn the duties of housekeeping, for the term of nine years from the 16th of *March*, 1844, thereby expressly giving to *Bolton* the right and authority over *Mary* and her services, during that period. In consideration of which *Bolton* agrees to give her a year's schooling, and at the expiration of the term to give her certain specified articles of household furniture. That this agreement had not expired at the time of *Mary's* seduction, nor at the birth of her child; that at the time the child was born, *Mary* was living with *Bolton* as his servant; and that afterwards the contract was canceled by mutual consent of *Miller* and *Bolton*.

There were five other paragraphs leading to issues of fact, on which no question for our consideration is presented.

The alleged seduction occurred in *June*, 1850; the birth of the child in the spring following; at both of which periods, the answer assumes, she was the servant and apprentice of the defendant, and owed no service, actual or

constructive, to her father. The question thus raised on demurrer is, whether the father had any right to control her services at the time of the seduction; and, as incident thereto, whether he had any right of action against *Bolton* for the loss of such service.

It is very properly conceded in argument that this indenture was not binding under the statute then in force in relation to "*masters and apprentices.*" Art. 5, c. 35, R. S. 1843. It was neither sealed, acknowledged, nor recorded, as required by that act. Many important statutory provisions, beneficial to the infant, are also wanting. The rights of *Bolton*, therefore, are not those provided by the statute; nor are his remedies to be found there. In case *Mary* had abandoned his service, *Bolton* could not avail himself of the process of reclamation pointed out in the 156th section of that act, and in those that follow. In brief, he could not, under that contract, have controlled her person or compelled her return; nor could he compel the father to return her. It is, therefore, clear that, under that contract, *Bolton* had not such legal control of her person as to compel her services.

The article set up, then, being merely a simple contract between *Bolton* and *Miller*, the remedy for its breach was by suit for damages. Had *Bolton* failed to give her the schooling and household goods, as stipulated, he would have been liable on the contract. Had the father taken his daughter from *Bolton's* service, without any just cause, it would have been a violation of the contract on his part. But we do not readily see how this contract could operate against the father by way of estoppel, or prevent him from reclaiming the person and services of his daughter, at any moment. Nor do we see any substantial ground of distinction between the case at bar and the numerous cases found in the books.

In *Martin* v. *Payne*, 9 Johns. R. 387, the father had permitted his daughter, who was nineteen years old, to live with her uncle, at stipulated wages, for such time as she saw proper to work. The wages thus earned were expended by herself as she thought best. While living at

her uncle's she was seduced. The Court held that the father had not divested himself of his power to reclaim her services, nor of his liability to maintain her and provide for her. She was still his servant *de jure*, though not *de facto*, at the time of the injury. The action by the father was accordingly sustained.

*Clark* v. *Fitch*, 2 Wend. 459, was a case somewhat similar to the present. At the time of the seduction the daughter was nineteen years old; and was then actually living out at service. The child was born at the house where she was at service, and the expenses paid by a third party. From the time of the seduction till after the birth of the child, she had not been at her father's house. The father was even ignorant of the fact of seduction, and of the institution of the suit, till some time after. Yet the Court held, that notwithstanding the father had given the daughter her time, and had incurred no expense, he had a right to recall her at pleasure, and control her services; and that, having such right, the relation of master and servant continued, and the action was well brought.

In *Bartley* v. *Richtmyer*, 4 Comstock 38, the doctrine of actual and constructive service, as applicable to this species of action, is elaborately considered, with no very friendly feeling on the part of the Court to extending it beyond the authorities. The judge who delivers the opinion (*Bronson*, C. J.,) says, "It is but natural that an upright magistrate should feel great indignation towards a seducer, and should sympathize warmly with those who have been injured; and judges have often regretted that the right to sue was confined within such narrow limits. It seems even to have been thought a reproach to our law that somebody should not have a right of action whenever an unmarried woman was gotten with child." Yet, from a review of all the cases, the Court, on that occasion, recognize the rule to be settled, that the relation of master and servant exists constructively between the father and his infant daughter, although she is actually in the service of another, at, &c., provided the father has a right, at any time, to reclaim her services.

This may be regarded as the *American* doctrine, as distinguished from the stricter rule as to service held in some of the *English* cases. It is the rule already adopted in this Court. In *Boyd* v. *Byrd*, the Court reviewed some of the leading cases, and adopted the rule of constructive service, in a case which may be thought quite as strong as this. There the father had given his daughter her time, while yet a minor. She accordingly left his house with his consent, about a year previous to the seduction, and without the intention of returning. She was residing with the seducer at the time, &c. This Court held the father could maintain the action. 8 Blackf. 113.

In relation to the effect of regular articles of apprenticeship, as affecting the rights of the father, we would not be understood to intimate any opinion. That question is not before us.

The simple question, therefore, in this case, is, was *Miller* entitled to his daughter's services, at the time of the seduction? We are clearly of opinion that he was. This case can not easily be distinguished from those cited. She was an infant. There was no such contract between the father and *Bolton* as would enable the latter to hold her against the father's will. Had he reclaimed her without just cause, to *Bolton's* injury, the only consequence would have been to lay him liable to an action for breach of contract.

It is urged that the father, in this case, was at no expense for her sickness—paid nothing. Neither did the father pay anything in the case of *Clark* v. *Fitch;* but in both cases they were liable to pay. Neither the *accoucheur* nor nurse could have sustained an action against *Bolton* for the value of their services, unless under a special contract. No implied assumpsit would have arisen in their favor, against *Bolton*, from his position as the master or employer of *Mary.* Such implied assumpsit would have arisen against the father.

As applicable to the rights of the father, in this case, the agreement, in the light of the authorities cited, can be regarded as nothing more than a license to his daughter to

appropriate her time and wages to her own use, till she was eighteen years old. That license he could recall at pleasure. We are, therefore, of opinion that the action is well brought, and the demurrer to the second paragraph correctly sustained.

As the contract was admissible in evidence under the fifth and sixth paragraphs of the answer, we must presume that the defendant had the full benefit of it. Indeed it elsewhere appears in the record that such was the fact. So that, even if the Court had erred in overruling the demurrer, the defence was not injured by it. *Streeter* v. *Henley*, 1 Ind. 401.

The second error assigned is, that the Court erred in their instructions to the jury, as to the legal effect of the contract set up in the second paragraph.

This is the instrument which has just been under consideration, and the view taken of its legal effect supersedes the necessity of further notice.

The third error assigned is, in overruling the motion for a new trial on the ground of newly-discovered evidence. The affidavit of *Bolton*, and of the witness, is properly presented within the rule. 4 Blackf. 309. The newly-discovered evidence consists of a casual remark of the plaintiff, that he did not care about the seduction of his daughter, provided *Bolton* was made to pay for it. The remark was certainly very imprudent and improper—indicative, perhaps, of anger and revenge, rather than indifference. Now, considering the position of the parties and the witness, it does not appear that *Bolton* had used due diligence or any diligence to avail himself of the indiscreet expressions of the injured parent. Nor does it seem to us that such a casual remark, imperfectly understood by the witness, should have any weight, even in the mitigation of damages. And that is all counsel contend for. A seeming insensibility in the father to the disgrace of his child would not place *Bolton* in any better light. From the glimpses of the case which the record affords, the injury was one of great aggravation. The newly-discovered evidence does not even tend to modify the reprehensible conduct of *Bolton*.

May Term, 1855.

We think, therefore, the Court correctly overruled the motion for a new trial on the ground of the newly-discovered evidence.

GOOKINS, J., having been concerned as counsel, was absent.

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages and costs.

*R. W. Thompson*, for the appellant.

*J. P. Usher*, for the appellee.