NEW-YORK,
May, 1829.

Clark
v.
Fitch.

</div>

Judgment for the plaintiff.

---

## CLARK *vs.* FITCH.

THIS was an action on the case for debauching the daughter of the plaintiff, tried at the Washington circuit, in June, 1825, before the Hon. WILLIAM A. DUER, one of the circuit judges.

A father, liable to a third person for the expenses of the lying-in of a daughter, who has been seduced within the age of 21, may maintain an action on the case for such seduction, although the daughter is a servant *de facto* of another, and the father has permitted her to leave his house, and has relinquished all claim to her services, and has incurred no *actual* expense.

A father may at pleasure revoke such licence, recall his daughter and control her services, and having such right, the relation of master and servant exists.

Whether a suit, brought under such circumstances, is instituted by the direction of the plaintiff, cannot be inquired into on the trial of the cause.

Continued attentions to a female for several months, followed by an improper intercourse, is evidence sufficient to warrant the inference of seduction.

The daughter of the plaintiff testified, that when seduced she was about nineteen years of age ; she was at service at the time as a hired girl, in the town of Pawlet, Vermont ; her father resided in the town of Sandgate ; she had lived with her father until he married a second time, when he told her that she might remain at home, or go out to work, as she pleased, but if she left his house she must take care of herself ; he then gave her her time absolutely, and relinquished all claim to her wages and services. He afterwards removed to the town of Antwerp, in this state, and requested her to go with him, which she declined. Her child was born in the house of Ira Hurd, in Sandgate ; the expenses of her lying-in were paid by him, and he looks to her father for them. Since her father removed to Antwerp, and since the child was begot, she has not been in his house ; he knew nothing of her having a child ; had been put to no trouble or expense in consequence thereof ; and had no knowledge of this suit, it having been brought at her request and for her benefit. Previous to the child being begotten, the defendant had visited her about three months. The plaintiff's counsel offered to prove by the daughter, that previous to the improper intercourse between the defendant and her, the defendant had promised her marriage, which evidence being objected to, was rejected by the judge. Hurd, the person at whose house the child was born, testified that he had paid the expenses of the lying-in, and that he held the plaintiff responsible for the amount.

The plaintiff having rested, the defendant moved for a nonsuit, which was refused by the judge ; and the cause being submitted to his charge, he instructed the jury that the foundation of this action is the loss of service and expense incurred ; that where seduction was actually proved, courts always charged in favor of, and jurors always were justifiable in giving exemplary damages, otherwise the plaintiff was entitled to recover only for actual damages ; that seduction was generally made out by a train of circumstances, such as continued attentions for a length of time, and the practice of arts and management to deceive and mislead the female ; that in this case there were no circumstances shewn

from which the jury might infer seduction; on the contrary, NEW-YORK, they might rather infer a voluntary assent on the part of the May, 1829. daughter, who had been permitted by her father to go out to' Clark work alone and unprotected, and in so doing, her father was v. guilty of culpable neglect on his part, which the jury ought Fitch. to take into consideration; that there could be no seduction without evidence of an intention to marry, of which there was none in this case; that if the jury were satisfied that no seduction had been proved, it would be for them to inquire the amount of damages incurred and actually paid by the plaintiff, and if nothing was shewn to have been paid, the plaintiff was not entitled to recover, except for loss of service; that there was no proof of any expense paid by the plaintiff, nor any evidence of the value of the daughter's services; on the contrary, it appeared that the plaintiff had relinquished his right to her services. Unless, therefore, the jury were satisfied that a case of seduction had been made out, the plaintiff was not entitled to a verdict. The counsel for the plaintiff excepted to the charge, and the jury found a verdict for the defendant.

*C. L. Allen,* for plaintiff, moved to set aside the verdict as against evidence, and for the mis-direction of the judge. He cited 3 *Starkie's Ev.* 1308; 1 *Starkie's R.* 228; 9 *Johns. R.* 387.

*S. Stevens,* contra.

*By the Court,* SAVAGE, Ch. J. It is true, indeed, "and pity 'tis, 'tis true," that this action is founded technically upon the supposed loss of service alone, the father and daughter being considered as standing in the relation of master and servant; yet it is perfectly well known that the actual loss of service constitutes very little or no part of the real ground of the action. The largest verdicts are often, and, most generally, given in cases where the daughter rendered no real service to the parent. The action is supported, not so much to remunerate in damages for the loss of service and expenses incurred, as to punish the offender for his dishonorable and disgraceful conduct, by way of atonement for the

injury inflicted upon the subject of his seductive arts, and upon her parents and their family.

The father is not permitted to maintain this action, unless he can shew the relation of master and servant existing either actually or constructively. If the daughter is above twenty one years of age, the father cannot prosecute unless the daughter resides with him and performs some acts of service, and any acts, however slight, will answer the purpose; but if the daughter is under 21, he may maintain the action, although she does not live with him, and is servant *de facto* to another, provided she is servant *de jure* to him; and in ascertaining whether the daughter is the servant, I apprehend the same liberality is to be extended to the father whose daughter within the years of minority is debauched, as to him whose daughter is above that age. It is, indeed, a legal fiction to call the daughter a servant who renders no service in fact, except, perhaps, making tea, mending stockings, &c. and is not under the control of her father. And it is also something like fiction to give the appellation of servant to a daughter who has been permitted, during her minority, to place herself in the service of others, and receive the wages of her own earnings for her own use. It would comport much better with common sense to say that a father, whose daughter has been seduced, shall maintain an action for the injury done to his wounded honor and his parental feelings; but such is not the law, and unless a party brings himself within the established principles in cases of this kind, he cannot maintain his action.

This case is, in many of its circumstances, like that of *Martin* v. *Payne*, (9 *Johns. R.* 387.) In both, the daughter when seduced was in the service of another person; in both, the daughter, but for the seduction, considered herself as emancipated from her father's control. In *Martin* v. *Payne*, the daughter, after seduction, returned to her father, who paid the expenses resulting from her situation; in this case, the daughter did not return, but a friend paid those expenses, and claims the same from the father, who is liable to pay them.

The only circumstances in this case, which are not found in other cases, are, 1. That the father gave his daughter her time absolutely; 2. He in fact incurred no expense; 3. The suit was not instituted by him. When the daughter left her father's house, he gave her her time, that is, he allowed her to receive her own earnings, and told her she must provide for herself. The effect of this would be, that if her employer paid her wages during her minority, the father could not compel payment again to him. But, suppose the daughter had become sick and infirm, would not the father have been liable for her support? and in that event, surely she would be returned to her former situation of servant to her father; and even without any such necessity, I apprehend the paternal rights of the father over the child were not relinquished by what passed between them. There was no consideration for the relinquishment of his daughter's services, and, in my opinion, he might at pleasure revoke the license he had given his daughter, and call her home and employ her in his service till she should arrive at maturity. If I am correct in this position, then the language of the late chief justice is applicable, when he said in *Martin* v. *Payne*, that the father had made no contract hiring out his daughter, and the relation of master and servant did exist, from the legal control he had over her services. This control is always presumed where the daughter is under 21; and Judge Reeve, in his Domestic Relations, p. 292, contends that even where the daughter is an apprentice to another, the father may maintain the action. He says: "Where a daughter is bound out as an apprentice, living with her master, a rigid adherence to the idea that the loss of service is the ground of this action, would prevent the father's recovery; but if we consider this action as really having its foundation in another principle, viz. the disgrace of the family, it would be no objection to the maintenance of this action, although the daughter should live as an apprentice to a master." In the case supposed by Judge Reeve, there would be a difficulty which he does not notice, viz. that the master to whom the daughter was an apprentice would have a right of action, and the defendant would be liable to two suits.

NEW-YORK,
May, 1829.

Clark
v.
Fitch.

This court, in the case of *Sargent* v. *Denison*, (5 *Cowen*, 116,) held that but for the cancelling the indentures of apprenticeship in that case, the mother could not have been entitled to sustain the action, and that it was not necessary that the relation of master and servant should exist at the time of seduction ; but the question should be, in an action on the case, upon whom has the consequential injury fallen ? In this case, if I am right in holding that the plaintiff is liable to Hurd for the expense incurred by him about the sickness of the daughter, it follows that the consequential injury has fallen upon the plaintiff ; for although he has actually expended nothing, yet he is liable to pay. From these circumstances, it results that the relationship of master and servant existed, that the loss has fallen upon the father, and of course he is entitled to sustain the action.

But it is said the plaintiff never instituted this suit in fact. Whether he did or not seems to me not a matter of inquiry upon the trial. If he sanctions the suit, though commenced without his orders, he has a right to do so ; and if he should disapprove it, the proper course to put an end to it is by motion. The attorney is responsible for any improper use of the plaintiff's name. The witness may not know whether the plaintiff has or has not directed or approved the suit.

I am of opinion, therefore, that the judge at the circuit was correct in refusing to nonsuit the plaintiff, but that the jury were misled by his charge. He correctly rejected evidence of a promise of marriage, (1 *Johns. R.* 299 ;) but he stated that there had been no seduction, no courtship which proved an intention of marriage. It appears from the testimony that the defendant had continued his attentions to the daughter for several months before the seduction, which seems to me sufficient on that point ; and in the view that I have taken of this subject, the judge also erred in saying that the plaintiff had no right to his daughter's services.

There must therefore be a new trial, costs to abide the event.