Bartley *v.* Richtmyer.

SAME TERM. *Before the same Justices.*

BARTLEY *vs.* RICHTMYER.

In order to maintain an action on the case, for seduction, it is not necessary to prove any actual service, or loss of service. It is sufficient for the plaintiff to show that he is *entitled* to the services of the person seduced.

An action on the case may be maintained by a father, for the seduction of his minor daughter, although, at the time of her seduction, she was actually in the employ of another person, with the plaintiff's consent, *it seems.*

Bartley *v.* Richtmyer.

When the action is brought for the seduction of a female *of legal age*, it can only be sustained by establishing the existence of the relation of master and servant *in fact*, at the time of the seduction.

But if the female be under age, it is enough for the plaintiff to make out the relation constructively. It is not necessary to show a service *de facto.*

If the daughter is a minor, at the time of the seduction, she will be presumed to be under the control and protection of her parent, so far as to enable him to maintain an action ; whether she actually resided with the parent, or not.

The implied relation of master and servant existing between a parent and his minor child will be assumed to exist, also, between any person standing *in loco parentis* and such minor child. And such person will be entitled to maintain an action for the seduction of the minor, in the same cases, and to the same extent, as it might have been maintained by the natural parent, if living.

It was accordingly *held* that the action might be maintained by a *step-father*, for the seduction of a step-daughter who had been taken into his house, and brought up as one of his own children, and in relation to whom he had assumed the place of a father and a protector ; where the female seduced was nursed and provided for, during her confinement, by the plaintiff's wife, and the expenses of her lying-in were borne by the plaintiff ; although at the time of the seduction she resided in the family of another person.

*Sargent* v. *Denniston,* (5 *Cowen*, 106,) considered and approved.

THIS was an action on the case, for seduction, tried before PARKER, circuit judge, at the Schoharie circuit, in May, 1847. The declaration stated that *Getty Ellen McGarry*, the infant step-daughter and servant of the plaintiff, was debauched by the defendant, and on the 6th day of August, 1846, was delivered of a child, whereby the plaintiff lost and was deprived of the services of his said step-daughter and servant.

It appeared upon the trial, that the plaintiff had married the mother of the girl, alleged to have been seduced, when the child was five years old ; that she was brought up in the family of the plaintiff and her mother. She left the plaintiff's family in April, 1844, and from that time until about four months previous to the birth of the child she worked at different places, making her own bargains and receiving pay for her labor. She then returned to the plaintiff's house, where her child was born. The expenses of her confinement were paid by the plaintiff. At the time the child was begotten she was living in the family of the defendant's father, at work by the week, doing house work. She made it her home at the plaintiff's, and after she

left, went home once in about two months, once stayed a fort-night, and when at home assisted her mother in her household affairs. When she went home she went in order to work for herself and to visit her mother.

The defendant's counsel moved for a nonsuit, on the ground that at the time of the seduction, the girl was neither actually nor constructively a servant of the plaintiff. The motion was denied, and the defendant's counsel excepted.

The circuit judge charged the jury, that the relation in which the plaintiff stood to the girl was such as to entitle him to maintain the action if, from the evidence, the jury should find that she had been seduced. The defendant's counsel excepted to the charge. The jury found a verdict for the plaintiff for $1000. The defendant, upon a case, moved for a new trial.

*M. Sanford,* for the plaintiff.

*S. W. Jackson & A. Taber,* for the defendant.

*By the Court,* HARRIS, P. J.   The foundation of this action is the supposed relation of master and servant, between the plaintiff and the girl seduced. Formerly it was deemed necessary in order to maintain the action, to prove some acts of service; though slight evidence was held sufficient. But now, it seems to be settled that it is not necessary to prove any actual service. It is enough to sustain the action, to show that the plaintiff is entitled to the services. (*Hewitt* v. *Prime,* 21 *Wend.* 79.) A constructive service is enough. And if it be no longer necessary to prove acts of service, it seems to follow, that it cannot be necessary to prove loss of service.

" The ground of the action," says Chief Justice Nelson, in the case of *Hewitt* v. *Prime,* above cited, " has often been considered technical, and the loss of service spoken of as a fiction, even before the courts ventured to place the action upon *the mere right to claim* the services; they frequently admitted the most trifling acts as sufficient." Now, the doctrine held by the court in the case of *Dean* v. *Peel,* (4 *East,* 49,) that actual

Bartley *v.* Richtmyer.

employment in the service of another, without an intent to return to the father's protection, is fatal to the action by the father, is justly repudiated. In *Clark* v. *Fitch,* (2 *Wend.* 459,) the plaintiff had given his daughter her time, absolutely, and relinquished all claim to her wages or services, and told her she must take care of herself. He had been put to no expense or trouble in consequence of the birth of the child, and had no knowledge of the suit; it having been brought at the request and for the benefit of the daughter. And yet it was held that the action was well brought in the name of the father. Although in fact the servant of another, yet being under age, she is by a kind of legal fiction, regarded as the servant *de jure* of her father. It is well remarked by Chief Justice Savage, in the last case, that "it would comport much better with common sense to say that a father whose daughter had been seduced, should maintain an action for the injury done to his wounded honor and his parental feelings." And in *Hewitt* v. *Prime,* already cited, Chief Justice Nelson remarks, that "the old idea of loss of *menial services,* which lay at the foundation of the action, has gradually given way to more enlightened and refined views of the domestic relations. The services of the child are not alone regarded as of value to the parent. As one of the fruits of more cultivated times, the value of the society and attentions of a virtuous and innocent daughter is properly appreciated."

There can be no doubt, therefore, that had the plaintiff been the father of the girl, he might have maintained the action, although she was actually in the employ of the defendant's father with the plaintiff's consent. But can the action be maintained by the *step-father ?* This is a question of much greater difficulty. It is no easy matter to extract from the numerous cases to be found under this head, in the English and American reports, any well defined boundaries of this action. In most of the cases, a commendable effort on the part of the court, to extricate the action from its mere technical form and to reach its real substance, which is to recover damages for the injury to the honor, the comfort and the happiness of the family whose

Bartley *v.* Richtmyer.

peace has been invaded by the seducer, is apparent. Hence it is, that so great liberality has been shown in applying a remedy for injuries of so deep and delicate a character. Hence it is that the right to maintain the action has been so extended as to embrace not only parents but other relatives standing *in loco parentis*, and even strangers who have adopted the children of others. The action itself is altogether anomalous in its character. It is a matter of deep regret, which has very often been expressed by the ablest judges both in this country and in England, that the right to damages should not, as in other cases, necessarily follow the real injury. It must be regarded as a reproach to the laws of any country that a claim to damages in such cases, founded, as it is conceded to be, upon the soundest principles of justice, and the enforcement of which is so important in the preservation of the morals of society, should be made to depend upon *the merest fiction.* But it is gratifying to observe the honorable zeal with which the courts have, in modern times, supported the interests of morality by giving reparation for injuries of this nature, without violating the legal principles upon which the action is founded. The loss of service has been regarded, like the demise in ejectment, or the *quo minus* in the exchequer courts, as a fiction employed for the purpose of introducing the action, and then making it the instrument of punishment to the invader of domestic happiness. In *Irwin* v. *Dearman,* (11 *East,* 23,) which was an action for debauching an adopted daughter, Lord Ellenborough said the action had always been considered as *sui generis,* in which a person standing in the relation of a parent is permitted to recover damages for an injury of this nature *ultra* the mere loss of service. And Sutherland, J. remarks in *Stiles* v. *Tilford,* (10 *Wend.* 339,) that "the action is altogether anomalous in its character, and the ordinary rules of evidence cannot, in all their strictness, be applied to it without defeating its essential object." As the real substance of the action is the recovery of damages for debauching the child, and thereby bringing disgrace and distress upon her family, the courts will not suffer the question of service to be disputed, but will, where the action is

Bartley *v.* Richtmyer.

brought by one standing in the relation of parent, *suppose* the service to exist.

I think it may be laid down as a general rule deducible from all the cases on the subject, that when the action is for the seduction of a female of *legal age*, it can only be sustained by establishing the existence of the relation of master and servant *in fact* at the time of the seduction. But even in such cases, evidence of the slightest character has been held sufficient to show that at the time of the injury done, the plaintiff was enjoying the services of the female seduced. Thus in *Hooper* v. *Luffkin*, (7 *Barn. & Cress.* 387,) an action by a father for the seduction of his daughter, who was a married woman, living, at the time, in his family, in a state of separation from her husband, was sustained. In *Speight* v. *Oliveira*, (2 *Stark. Rep.* 493,) the daughter, who was of legal age, was seduced while in the employment of the defendant—yet Lord Chief Justice Abbott left it to the jury to decide whether the daughter was withdrawn from her father's house under a *bona fide* contract for her services, or whether it was a contrivance for the purpose of gaining possession of her person ; and he held that if the latter were true, the action was maintainable. The smallest degree of service will suffice, if the party seduced be in fact under the plaintiff's control at the time. (*Miller ads. Thompson*, 1 *Wend.* 44. *Nickleson* v. *Stryker*, 10 *John.* 115. *Moran* v. *Dawes*, 4 *Cowen*, 412. *Martin* v. *Payne*, 9 *John.* 387.)

But while it is necessary to establish the relation of master and servant *in fact*, to sustain the action for the seduction of a female of legal age, it is enough, if she be under age, to make out the relation constructively. It is not necessary to show a service *de facto*. Courts, however, have not always been agreed, upon the application of this rule, nor upon the principle on which it is founded. Sometimes, as in *South* v. *Denniston*, (2 *Watts*, 474,) the right to maintain the action has been placed upon the duty of the father to educate and maintain his minor children. And in that case it was held, that as the mother, who was a widow, was not bound to this duty, she was not entitled to the correlative right of service, and therefore could not

maintain an action for the seduction of her daughter, though under age, while living with the defendant's father. In other cases, as *Martin* v. *Payne* and *Clark* v. *Fitch*, before cited, the right of action is put upon the ground of the legal control of the plaintiff over his minor child. In *Sargent* v. *Denniston*, (5 *Cowen*, 106,) it was held that the real inquiry was, not whether the plaintiff was bound to maintain and educate her child, nor whether the plaintiff, at the time of the seduction, had the legal control of her services, but upon whom the consequential injury had fallen. The latter case has been much questioned in some of the states. The case of *South* v. *Denniston* is in direct conflict with it. And in *Logan* v. *Murray*, (6 *Serg. & Rawle*, 175,) it was held that the mother could not maintain the action after her husband's death; the seduction having taken place in his lifetime. This, however, was an action of trespass, and perhaps the decision may be correct on account of the form of the action. The alleged trespass having been committed in her husband's lifetime, gave her no cause of action, and of course the technical foundation of the action failed. But if, instead of bringing trespass for the direct injury, she had brought case for the consequential damage, the action might, perhaps, have been sustained. In our own courts the case of *Sargent* v. *Denniston* has never been overruled or doubted. On the contrary, it has repeatedly been referred to with approbation. (*Clark* v. *Fitch*, 2 *Wend*. 464. *Miller ads. Thompson*, 1 *Id*. 450.) The principle decided in that case is, that if the daughter be under age, at the time of seduction, she will be presumed to be under the control and protection of the parent, so far as to maintain this action; whether she actually resided with the parent or not. Or, as it is expressed by Savage, Ch. J. in *Clark* v. *Fitch*, the question should be, in an action on the case, upon whom has the consequential injury fallen? If upon the plaintiff, he is entitled to maintain the action.

But conceding that the *implied* relation of master and servant always exists between the parent and the child within the years of minority, so as to sustain an action founded upon such relation, the question remains whether it may also be

Bartley *v.* Richtmyer.

assumed to exist between any person standing in *loco parentis* and the minor child? Whether in the one case the seducer shall be punished as an invader of domestic peace and an offender against public morals, while in the other case, with no better pretensions, the law shall afford him impunity and protection. If it be so, injustice must be allowed to triumph. A great fundamental principle of our laws, which professes to provide a remedy for every wrong, must be violated. Instead of administering substantial justice to all indiscriminately, the law will resemble " a net with broken meshes, taking some and allowing others to escape." If the good sense, and sound morality, and exalted justice, which invented this anomalous action and for fifty years have been supporting and enlarging its boundaries, are to prevail over the most unmeaning fiction, then the action belongs alike to all who, sustaining the relation of parent, guardian or protector, occupy the place of a *pater familias.* Whatever the legal fiction to which courts are compelled to resort in order to bring the matter into court, the action, as was said by Judge Reeve in his Domestic Relations, page 292, " really has its foundation in another principle, the disgrace of the family." And none will deny that the wound may be as deeply fixed by the seducer in the feelings and reputation of the family in the case of the orphan, as when the parent is living.

I have found no case in which it has been expressly decided that an action would lie, under circumstances like those contained in the case at bar; and I admit that it is with great diffidence, and not without much hesitation, that I have come to the conclusion that this action can be sustained. I think, however, after the great lengths to which courts have gone in kindred cases, to save justice from an inglorious defeat, it is now safe to adopt the rule that he who stands in the place of a natural parent, having received a child into his house as one of his family, whether he be a relative or merely a domestic benefactor, shall be entitled to an action for the seduction of such child, in the same cases and to the same extent, as it might have been maintained by the natural parent if living.

If we adopt this rule, it is obvious that this action should be sustained. The weight of the injury has fallen upon the plaintiff and his family. There is no other person who can sustain the action; so that if it is not maintainable by the plaintiff there must be a failure of justice. The party seduced had been taken into his house and brought up as one of his own children. He had assumed the place of a father, and acted as her protector. Though not actually residing in his house at the time, she considered that as her home—she had never abandoned the plaintiff's care and protection. During the time she was out at work, she often returned to his house as her home, and when there, assisted in household affairs. Her furniture and a part of her clothing always remained there, and when debauched by the defendant she naturally sought an asylum with the plaintiff as her only protector and friend. She was nursed and provided for during her confinement by the plaintiff's wife, and the expenses of her lying-in were borne by the plaintiff. These circumstances were sufficient, I think, to justify the charge of the circuit judge that the plaintiff stood in such a relation to the girl as entitled him to bring the suit in his own name. The motion for a new trial is therefore denied.

