Gray *v.* Durland.

its consideration as a defense to the plaintiff's claim of exemption from levy and sale on execution of the property in suit.

Judgment affirmed.

[ST. LAWRENCE GENERAL TERM, October 2, 1866. *Bockes, James, Rosekrans* and *Potter*, Justices.]

———————

CELINDA GRAY *vs.* COE DURLAND.

A mother, in case of the father's death, has the same right to the services of a minor child that the father would have, if living. Hence she may maintain an action for the seduction of her daughter, who is a minor. HOGEBOOM, J. dissented.

The fact that at the time of the seduction the daughter happened to be temporarily in the employ of another person, with the assent of the mother, and as a means provided by her for the support of the minor, will not constitute a bar to an action by the mother.

APPEAL from a judgment entered on the verdict of a jury, and from an order made at special term denying a motion for a new trial. The action was brought by the plaintiff to recover damages for the alleged seduction of her daughter, Harriet Amanda Gray, a minor, whose father was dead. The complaint alleged that the daughter at the time of the seduction was between the ages of sixteen and seventeen years, and resided with the plaintiff, who was entitled to her services and earnings. That the plaintiff was deprived of the services of her said daughter and servant, during her illness connected with her pregnancy and confinemen, and was put to expense in nursing and taking care of her, and in providing medical assistance for her during said illness, and bestowing labor and services in taking care of, nursing, feeding and clothing said Harriet Amanda during her said illness and confinement, to the damage of the plaintiff of $3000, for which sum and costs the plaintiff asked judgment.

Gray *v.* Durland.

The answer was a general denial. On the trial, the seduction, pregnancy and birth of a child were proved. It was also proved that at the time of the seduction, the daughter was living · at the defendant's house, as a servant in his family ; that she had been in the habit of going out to servie at different periods of time, and had lived in several families as a servant, by and with the advice and consent of her mother, the plaintiff, and for the purpose of earning something towards her own support ; but always intending to return to her mother's home, and considering that her home.

When the plaintiff rested, the defendant moved for a nonsuit, upon the grounds,

1st. That this action can only be maintained when the relation of master and servant exists, and where the master is entitled to the services of the servant.

2d. That no such relation exists between the mother and child, and the mother is not entitled to the services of the infant child by law.

The motion was denied, and the counsel for the defendant excepted.

At the close of the testimony the defendant's counsel asked the judge to charge the jury, that as matter of law the plaintiff could not recover if the jury found that at the time of the alleged seduction, her daughter Amanda was in the actual service of any other person than the plaintiff. This the court refused to do, but charged the jury that if they found that the daughter was a minor at the time of the alleged seduction, the plaintiff had a right to recover, and whether the daughter was in the service of the plaintiff or any other person. To which the defendant excepted.

The jury found a verdict in favor of the plaintiff for $1000.

*L. Tremain,* for the appellant.

*A. J. Parker,* for the respondent.

MILLER, J. I am not prepared to concur in the doctrine that the mother of a minor child, when the father is deceased, cannot maintain an action for her seduction, whether she may be in the service of such mother or of any other person. No such principle has ever been decided in this state, and I think the tendency of the decisions is in a contrary direction. The courts have leaned very decidedly in favor of sustaining the action for seduction which of itself originally was founded almost entirely upon a legal fiction, and at this late period there should be some hesitation, I think, in upholding a rule which in many cases would strike at the very foundation of an action for seduction, and deprive the mother, who above all others, is injured by the seduction of a daughter, of a right which it would seem to be eminently proper and suitable that she should be permitted to enjoy. In my opinion this should not be done unless sanctioned and sustained by the highest authority and the clearest adjudications, and by a sound principle of law.

Although the old English doctrine has been sustained in some of the states in this country, yet I think that in most of them a different rule has been invoked and upheld, and one more consistent with our institutions, that the mother, in case of the father's death, has the same right to the services of the child that the father would have if living.

In *Reeves' Domestic Relations, (Gould's ed. of* 1862, 426,) the doctrine is laid down : " This action is maintainable when the father is deceased, by any one who stands in *loco parentis,* as by a mother or aunt."

At common law, by nature, on the death of the father the mother is the guardian, and this guardianship extends to the age of twenty-one years of the child, and it extends to the custody of the person. (2 *Kent's Com.* 217.)

By the statute of this state the father and mother, being of sufficient ability, are bound to maintain their poor and infirm children, who are unable to support themselves. (1 *R. S.* 614. *See also* 2 *Kent's Com.* 190, 191.)

Gray *v.* Durland.

The learned author last cited lays down the general rule that the father is bound to support his minor children, if he be of ability, even though they have property of their own ; but this obligation in such case does not extend to the mother, and the rule as to the father has been relaxed. (2 *Kent's Com* 191.) I think this observation must be considered as applicable to a case where the child has property, and not as a a general rule in reference to the custody and services of the child. So, also, the subsequent remarks at page 193, that in consequence of the obligation of the father to provide for the *maintenance and education* of his infant children, he is entitled to the custody of their persons and to the value of their labor and services, has reference only to cases where the father is living, and has no application when the mother survives him.

This construction is supported by and consistent with the rule laid down subsequently at page 215. "That the father, and on his death the mother, is generally entitled to the custody of the infant children, inasmuch as *they are the natural protectors for maintenance and education.*" And at page 206 : "That in case of the death of the father during the minority of the child, his authority and duty by the principles of natural law would devolve upon the mother."

The effect of the rule laid down would seem to be to give the mother, in case of the father's death, the control of the person of the infant, and although the right of the father is paramount and controlling while living, yet upon his death the mother succeeds to the powers and rights vested in him over the person of the infant, and as a consequence and as the natural protectress for maintenance and education, she certainly ought to have a right of action for the seduction of her minor daughter. In this connection it may be well to refer to some of the authorities in this state bearing upon the question under consideration. In *Martin* v. *Payne*, (9 *John.* 387,) it was held that an action could be maintained by the father for the seduction of his minor daughter

who, with his consent had lived with the uncle, for whom she worked when she pleased, and he agreed to pay her for her work. The decision was put upon the ground, that she was the servant of the father *de jure*, though not *de facto*, at the time of the injury, and being his servant *de jure* the defendant had done an act which had deprived the father of his daughter's services, and which he might have exacted but for that injury. If the mother occupies the same relationship to the minor child as the father, as would seem to be upheld by the authorities to which I have referred, then she has precisely the same right as the father to maintain the action.

Having in view this principle, sustained as it is by the dictum of the elementary writers which has been cited, I pass to the consideration of some cases which would appear to uphold the doctrine that the mother of a minor child can maintain the action.

In *Sargent* v. *Denniston*, (5 *Cowen*, 106,) it was held that an action would lie by the mother, who was a widow, for the seduction of her minor daughter, who was bound out as an apprentice, and who returned home to her mother's house and lay in there, the indentures having been canceled by consent. The authority of this case is questioned in *Bartley* v. *Richtmyer*, (4 *Comst.* 38, 45, 46,) upon the ground mainly, that there was no relation of master and servant between the plaintiff and her daughter, either *actual or constructive* at the time of the seduction, she then being the servant of another, who had a legal right to her services. The learned judge indulges in some remarks, adverse to the right of the mother to maintain the action, which were not called for, as no such point arose in the case. Nor does it appear that the question was discussed, whether the mother, after the death of the father, had a legal right to maintain the action. Coming as these observations do from a learned jurist of signal ability and extensive legal acquirements, they are entitled to great weight, but should not be decisive if adverse to the current of authority and the principles laid down in the elementary books.

In *Bartley* v. *Richtmyer* (2 *Barb.* 188,) Harris, J. says, in reference to the case which is cited approvingly from 5 *Comstock*, " In our own courts the case of *Sargent* v. *Denniston* has never been overruled or doubted ; on the contrary it has repeatedly been referred to with approbation." (*Clark* v. *Fitch*, 2 *Wend.* 464. *Thompson* v. *Miller*, 1 *id.* 450.)

In *Ingersoll* v. *Jones*, (5 *Barb.* 661,) it was held that the action could be maintained for the seduction of an adopted daughter by a person standing *in loco parentis* to her, although at the time of the seduction she was in the service of another family, with the plaintiff's assent. The learned judge held that she was the child and servant of the plaintiff at the time of her sickness, and the loss of service and expense resulting from it fell upon the plaintiff, and this entitled him to maintain the action.

In *Williams* v. *Hutchinson*, (5 *Barb.* 122,) which was an action brought by a step-daughter to recover of her step-father the value of her services in his family, JOHNSON, J. lays down the rule that, " while the mother remains a widow she is bound to provide for her children, and is entitled to control them while under age, and to collect their earnings while in the service of others." He thus affirms the doctrine that the mother is entitled to the services of the minor child upon the death of the father.

In *Mulvehall* v. *Millward*, (1 *Kern.* 343,) it was decided, that the action for seduction can be sustained where the relation of master and servant exists, actually or *constructively*, between the plaintiff and the person seduced, at the time of the seduction. If, as is held in some of the authorities cited, the plaintiff had a right to the services of her daughter, then of course she would be entitled to maintain this action, under the case last cited.

In the *matter of Ryder*, (11 *Paige*, 185,) the chancellor lays down the rule that a parent who has the means is undoubtedly bound to support his or her minor child, and that the law gives the parent a corresponding right to the

Gray *v.* Dnrland,

services of the child while such support is afforded. It is said that the question now presented did not arise, but I am inclined to think it had something to do with the application to the court, which was to compel the mother to furnish means for the education of the applicant. But whether such be the case or otherwise, the dictum of the learned chancellor is entitled to great weight upon a question of this kind.

In 28 *Barb.* 303, some authorities are referred to and quoted by INGRAHAM, J. which hold that at common law the mother has not, like the father, a legal right to the services of a minor child ; but I do not understand the learned judge to decide that such is the law, nor was it necessary so to decide in order to dispose of the question before him.

It will be seen that in this state most of the cases tend to sustain the position that the mother of a minor child is bound to support it, and is entitled to its services. With the exception of the remarks of Bronson, J. in *Bartley* v. *Richtmyer*, (4 *Comst.* 38,) there is quite a uniform current of authority, and the expression of opinion is generally in favor of the mother's right to maintain the action, upon the decease of the father.

A similar view has been taken of the question in Massachusetts, and it is decided " that the mother, after the death of the father, remains the head of the family. She has the like control over the minor children as he had while living. She is bound to support them if of sufficient ability and they cannot in law be taken from her." . (*Dedham* v. *Natick*, 16 *Mass. Rep.* 135. *Nightingale* v. *Withington*, 15 *id.* 272 to 274. *See also Jennings* v. *Emerson*, 15 *N. H. Rep.* 456, 486 ; *Graham* v. *Kinder, B. Munro*, 60 ;) which recognize the right of the mother to sue for the services of the minor child.

In *Campbell* v. *Campbell*, (3 *Stock.* 258,) it is said : " Generally, upon the father's death, the mother, as the natural guardian, is entitled to the earnings of her children during their minority."

Gray *v.* Durland.

In *Osborn* v. *Allen,* (2 *Dutch.* 388–391,) the question now considered was fully discussed and the cases reviewed. It is held that upon the death of the father the mother has the same right over the minor child that the father had while living, and may command the services to the same extent. (*See also Nightingale* v. *Shaler,* 3 *Strobhart,* 462 ; *Kelly* v. *Donnally,* 5 *Md. Rep.* 211 ;) which hold similar views. It is true that in some of these cases the question does not appear to have been directly involved, but the intimations made are entirely in favor of the mother's right, in all of them. And it would seem strange that so many learned judges should entertain such views if they were fallacious and unless there was some foundation for the principle enunciated.

The Pennsylvania cases appear to be mostly adverse to the maintenance of the mother's right, excepting *Low* v. *Moffatt,* (2 *Penn. Rep.* 583,) which seems to countenance such right. *Louth* v. *Denniston,* (2 *Watts,* 474,) holds the contrary doctrine. So also, *Logan* v. *Murray,* (6 *Serg. &* *Rawle.* 175,) is to the same effect. In the last case the daughter became pregnant while living with her father, and continued to reside with her mother after her father's death. The case was decided upon the ground that whatever damages the mother sustained were from an act committed during the father's lifetime. In *The Commonwealth* v. *Murray,* (4 *Bin.* 488,) on an application for a habeas corpus by a widow, it was held that she had no right to the services of her infant son who was seventeen years of age. In *Roberts* v: *Connelly,* (14 *Ala. Rep.* 233,) it was held, that the mother, who was a widow, could not recover for the seduction of an infant daughter who was living with the defendant at the time of the seduction.

Some English cases are cited which unquestionably sustain the defendant's views ; but I think that the weight of authority in this country is decidedly in favor of the mother's right to maintain the action for the seduction of her minor daughter.

For a long time an actual loss of service was deemed essential for the maintenance of the action, but latterly the action has been made to accommodate cases where the daughter rendered no service, and a fictitious or supposed loss of service has been tolerated as the gravamen. (*Burr.* 1878. 2 *Durnf. & E.* 166, 168. 1 *Mood. & Malk.* 528.. 7 *Car. & P.* 528. 9 *John.* 387. 21 *Wend.* 791.) It may now be maintained by an aunt, an uncle, guardian, and grand father of an illegitimate child. It is not confined to the father, or relatives by blood, or even to those who have a right to the services.

In the case at bar the daughter who was seduced had made her home at the house of her mother, the plaintiff, and had been out at service at different periods of time, by and with the advice of her mother and for the purpose of earning something towards her own support, always intending to return. It was the home to which she could flee for refuge at a time of trial or difficulty and expect maintenance and protection. She was virtually although constructively in her mother's service when thus earning her support, subject to her commands as a parent, and as her natural guardian and protectress.

Under the circumstances presented it is perhaps a serious question whether any facts existed to which the request to charge was applicable, but waiving that point, I prefer to put my opinion upon the broad ground that upon authority and principle the mother, as such, has the right to maintain this action, as the natural guardian of the minor, as the person bound to maintain and support her, and as the parent who is entitled to her services upon the decease of her father. This is in conformity to the law in this state, as I understand it. It answers the ends of justice, and is consistent with the spirit of progress, that results from the common law which provides in some degree for its own improvement and which gives the assurance that its leading principles cannot fall very far behind the spirit of the age, and by virtue of which courts have frequently modified remedies to

Gray *v.* Durland.

meet new exigencies. (*See Butler* v. *Van Wyck,* 1 *Hill,* 460; *King* v. *Baldwin,* 17 *John.* 391. *Ram. on Legal Judg.* 8, ·158, 159. 2 *Sch. & Lefroy,* 666. *Willes' Rep.* 51. 26 *Com. Law R.* 148, 149.) At this day, to hold that the mother, after the father's decease, cannot maintain the action for the seduction of her minor child, because at the time she happened to be temporarily in the employment of another person, with the assent of the mother and as a means provided by her for the support of the minor, would in my judgment be taking a step backward in the history of the law in reference to actions of this character, and would be entirely unsuited to the present condition of society. I think that I have shown that the law does not sanction any such principle, and that there was no error on the trial in charging or in refusing to charge the jury.

Concurring with the views expressed by the learned judge upon the other questions presented, I am brought to the conclusion that a new trial must be denied.

PECKHAM, J. concurred in the result.

HOGEBOOM J. dissented. (*a*)

New trial denied

[ALBANY GENERAL TERM, March 4, 1867. *Peckham, Miller* and *Hogeboom,* Justices.]

(*a*) See his opinion post p .211