Allen, J.,
dissenting. The appellant presents but a single question for the judgment of this court, and that is upon the right of the plaintiff to maintain the action. The action itself is an anomaly in many of its aspects, and, if a wise public policy demands its preservation, discreet legislation could do much by so limiting and regulating it as to make the real purpose and object more consistent with the technical *441 ground upon which it rests, and upon which alone it can he sustained, and declaring by whom, and under what circumstances, it may be brought.
In maintaining the action, the relation of parent and child is ignored, and that of master and servant alone recognized. A loss of service to the master is at the foundation of the action, and the plaintiff can only count as master for the damages resulting from such loss of service, and the loss and expense of nursing and attending the female during her sickness, but the real purpose of the action is to punish the seducer and obtain compensation for injured honor, wounded feelings, and family disgrace, and effect is given to it for these purposes so that the original and technical foundation of the action is ignored, except for the mere purpose of giving the plaintiff a standing in court. The mere relation of parent and child will not give a right of action for the seduction of an unmarried female, but the relation of master and servant, either actual or constructive, must exist, and the female seduced must be in the actual service of the plaintiff, although the service in fact rendered may be the most trifling and inconsiderable, or the plaintiff must be of right entitled to demand and have her services. She must be under his ‘ actual or constructive control and dominion, but if she is under the age of twenty-one years, and resides with her ■ father, no proof of actual service is necessary. (Hewit v. Prime, 21 Wend., 79.) If such a relation as that described exists between the plaintiff and the injured female, it'matters not whether the plaintiff be the parent or merely stands in loeoparentis, and an uncle or aunt, a step-father or one having no affinity to the female who has been wronged can; sustain the action. (Clark v. Fitch, 2 Wend., 459; Martin v. Payne, 9 J. R., 387; Millar v. Thompson, 1 Wend., 447; Beatty v. Richtmyer, 4 Comst., 38; Mulvehall v. Millward, 1 Kern., 343; Dain v. Wycoff, 3 Seld., 191; S. C., 18 N. Y., 45.) In England it is not enough that the plaintiff is legally entitled to the services of the female, she must be in his actual service at the time, and if she is in the service of *442 a third person, the father cannot maintain the action. (Blaynin v. Hailey, 6 M. & W., 55; Grinnell v. Wells, 7 M. & G., 1033.) The wrongful act for .which the wrong-doer is liable is the seduction. That is the invasion upon the rights of others for which the law holds him responsible, and whether the action is trespass quare clausum fregit, the debauching of the servant being alleged in aggravation of damages, or on the case strictly a per quod action is not material. Although the loss of service as the result of the wrong is essential to the action, the relation of master and servant must exist at the time of the injury, and if it does not it will not avail that it does exist at the time of the lying in and consequent loss of service. (Martin v. Payne, Millar v. Thompson, Beatty v. Richtmyer, supra; Ingersoll v. Jones, 5 Barb., 661; Dain v. Wycoff, supra; Mulvehall v. Millward, supra; Davis v. Williams, 10 Q. B., 725; Smith v. Deniston, 2 Watts, 447.) These and other authorities to which reference might be made are in conflict with Sargent v. Dennison (4 Cow., 106) and Coon v. Moffatt (Pennington [N. J.] Rep., 436). Judge Bronson, in Beatty v. & Richtmeyer, says: “ It is quite clear that the reasoning of Mr. Justice Sutherland, in Sargent v. Bennison, cannot be supported; ” and Gibson, Ch. J., in Smith v. Beniston, places the action upon the same footing as an action for beating or maltreating a servant, and makes no distinction between a loss of service occasioned by beating or impregnation. It is quite clear that no action would lie for beating one who was not in the plaintiff’s employ at the time, and there is no good reason why an action should lie for a seduction accomplished before the existence of the relation of master and servant existed. In the language of Gibson, Ch. J., it is an act of folly for one to employ an unfit person as a servant. Upon this point Sargent v. Dennison and Goon v. Moffat must be regarded as overruled.
Was, then, the daughter of the plaintiff at the time she was debauched by the defendant in her actual or constructive service ? Had the plaintiff the legal right to claim the *443 services of the daughter ? If so there can be no doubt of her right to maintain the action. Had the daughter at the time resided with the plaintiff as a member of her family and been supported and maintained by her, her right to the action would hardly be questioned. The relation of mistress and servant would have been implied from the other relation of parent and child, without proof of any actual service rendered by the daughter to the mother. The fact that the daughter remained in the family of the mother and was supported by her would give her the legal right to such services as are usually rendered by children to parents in the same station of life. At least the circumstances would authorize the presumption that such services were rendered, and that they were lost to the mother by the sickness and inability of the daughter to render them. (Andrews v. Askey, 8 C. & P., 7; Hewit v. Prime, supra.)
In this case, the daughter was at the time of the injury, and had been for some four years, in the service of the father of the defendant as a servant in his family, and received, as the referee finds, five dollars per month, paid to her by him under an agreement with the plaintiff. The only evidence upon this point is by. the daughter, and she merely states, • after referring to the time she had lived at the elder Van Sise’s: “ I did housework there; I was to have five dollars a month wages; I went from home when I went there; Mr. Van Sise and my mother made the arrangement when I went there; Mr. Van Sisé paid me; he paid me just when I wanted it; I did not keep any account of ifc myself.” During the four years the plaintiff, so far as appears, neither exercised any control over the daughter, contributed to her support, or claimed any part of her earnings. Before her lying in, the daughter left the service of Van Sise and went to service in the family of a Mr. Murray and remained there till she became disabled, and then returned to her mother’s house, and was there confined. There was no evidence that the mother was consulted or had any agency in the change of service from Van Sise’s to Murray’s. The hiring to Van Sise was not a hiring for wages to be *444 paid to the mother, but rather a hiring by the daughter under the advice and with the aid of the mother. The plaintiff’s claim must rest upon the legal right to the services of the daughter, and if that is established, as there was no contract or covenant or other legal impediment to hinder the plaintiff from reclaiming the daughter and her services at the time of the wrong done, the relation of mistress and servant constructively existed, and the action can be maintained. (Clark v. Fitch,, Martin v. Payne, Mulvehall v. Millward, supra.)
The statutes of the State imposing upon the mother the duty of supporting her indigent children (1 E. S., 614, § 1), or requiring her consent, in case of the death or disqualification of the father to act, to the binding out of her children as apprentices (2 E. S., 154, §§ 1, 2), or taking from the father the power to bind his child to apprenticeship or service, or to create any testamentary guardian for them, unless the mother, if living, shall, in writing, signify her assent thereto (Laws of 1862, chap. 172, § 6), do not bear upon the question. The claim that the first mentioned statute, and the contingent obligation to support the child imposed by it upon the mother, gives to her a general right to the service of the child as correlative to the obligation imposed, is answered in Smith v. Boyer (2 Watts, 174). The second of the statutes was designed for the protection of the infant; and in case the father and mother are both dead or incapacitated to act, the consent of public officers to the binding is required. The last of the acts referred to only gives to the mother a negative upon the common-law rights of the father, but confers no affirmative rights upon her.
Neither does the fact that in certain cases, and among them in case of the death of the father, the mother is entitled to the guardianship affect the question. A guardianship carries with it no obligation to support, except from the means of the ward, or right to service; and it terminates when the ward arrives at the age of fourteen years, if the ward so elects. (2 E. S., 150.)
These statutory modifications of the rights and obli *445 gations of parents do not confer upon the widowed mother any right to the services of an infant child, and her right must depend upon the common law, which, subject to the power of alteration vested in the legislature, is a part of the law of the State. (Const., art. 1, § 17.) Should we be of the opinion that any distinction between the parents as to their authority, rights and obligations in respect to the children was without foundation in principle, and that the duties of parents to their children rest equally upon the father and the mother, and that their rights were the same by the law of nature, we should still be bound to declare the law as we find it, and leave it to the legislature to give to the mother any just and natural rights over her children and to their services which the common law does not accord her. It is not denied even by those who go the farthest in the maintenance of the right of the widowed mother, so long as she remains unmarried, to something more than the reverence and respect of her minor children, that the law does distinguish between the father and mother, as well in regard to the obligations to support them as the right to command their services; and judges have found it necessary to discover some special ground for taking individual cases out of the rules of the common law. The right of parents to the services of their children results from their duties; and the duty of the father to support his infant child is absolute, irrespective of the means of the child or his ability to care for himself; and from this results the absolute right to the services of the child during his minority. The obligation of the mother to support her children is qualified, and only exists when they have no means and are incapable of supporting themselves. The duties and rights of parents being correlative, and the father and mother not being under the same obligations or bound to the same duties, it legally follows that their rights are also different. But whatever may be the reason of the rule, it is well settled, and quite too firmly established as a part of the common- law to be changed by judicial action, that, while the father is entitled to the services of his minor *446 child and the constructive relation of master and servant exists between them, notwithstanding the child may be temporarily in the actual service of another, the mother is not entitled to the service of her child except when such child is living with and supported by her; and that when the child is in the actual service of another the relation of mistress and servant does not exist. between them. The law does not recognize that relation as constructively existing between a mother and child, and the mother can only claim the benefit of the relation so long as it actually exists. (1 Bl. Com., 453, per Bronson, J.; Beatty v. Richtmyer, supra; Davis v. Williams, 10 Ad. & El., 725; Commonwealth v. Murray, 4 Binny, 487; Smith v. Boyer, supra; Pray v. Gorham, 31 Maine, 240; Whipple v. Dow, 2 Mass., 415.)
The authorities bearing on this question are collated and well reviewed, as well in the dissenting opinion of Hogeboom, J., as in the prevailing opinion of Miller, P. J., in Gray v. Durland (50 Barb., 100, 211); and it would lead to a repetition of much that is said by the learned judges in that case, to refer to the decisions in detail. Suffice it to say, that the great preponderance of authority is, as we think, with the dissenting opinion and adverse to the judgment in that case. It being conceded that the right to the service of a child rests upon the duty of the parent to support it, and that that duty does not rest upon the mother as it does upon the father; and that while the dominion of the father over the child continues until it arrives at its legal majority, the right of the mother is only to the guardianship of the child until it arrives at the age of fourteen; and that such right may, except as prevented by statute, be defeated by the testamentary right of the father, and there is but little foundation under the common law for the claim of the mother to occupy in all respects the position of the father as the head of the family, with dominion over the children and their services after his death. Simpson v. Buck (5 Lans., 337) was decided upon the authority of Gray v. Durland, and is - adverse to the current of authority. In Coon v. Moffat *447 (supra), the judgment was reversed by the majority of the court, who thought the action maintainable for an error in the charge to the jury as to the measure of damages ; but the opinion of Kirkpatrick, Oh. J., was against the maintenance of the action, for the reason that the relation of mistress and servant did not exist, and that there was no evidence or circumstance from which a constructive service could be raised, as the law does sometimes in consideration of maintenance.
In Campbell v. Campbell (11 N. J. Equity Report, 268) the Chancellor says, in substance, that the mother, upon the death of the father, as the natural guardian, is entitled to the earnings of her children during their minority, but that this general principle may be rendered inapplicable from various circumstances, and the principle was not’ applied in that case; the mother having permitted the child to leave her roof and provide for himself, it was regarded as an emancipation of the child, clothing him with authority to receive his own wages. (And see Jenness v. Emerson, 15 N. H., 486.) Osborne v. Alien (2 Dutch, [N. J.], 388) was an action by the mother for the wages of her son, a minor, the husband having been absent and not heard from for a time that authorized the legal presumption of his death. The son lived with the mother, submitted to her control, and made no claim for his wages, and the contract of hiring was with the mother; and by reason of the circumstances, rather than .upon the legal right of the mother to the services of the son, the judgment was for the mother. Elmer, J., says: “Under these circumstances, I think the court, judging of the facts as a jury might, if the trial had been before a jury, had a right to infer that the defendant expected to pay the plaintiff, and contracted with her to do so.” Potts reasons to the same effect, and Vandenburgh, J., concurred. The learned Chief Justice (Green), whose opinion is entitled to great weight, is very decided in favor of the legal right of the mother, the father being dead, to the services of her infant children as the father would be if living, and is of the opinion that the adverse proposition, as stated 2 Blackstone’s Commentaries, 453, and Commonwealth v. *448 Murray (4 Binn., 487) is not consistent with the principles of natural law, with the rules of common law or with the dictates of sound public policy. No common-law authorities are cited in support of the opinion, and it is not enough that a sound public policy or the principles of natural law demand that all-the rights claimed for the mother should be accorded her, so long as the rules of the common law are against it, as that is the law which this court must administer until it is changed by the legislature.
These views lead to a result different from that to which I would gladly have come. If actions of this character are to be encouraged or permitted, there is every reason why a mother, the father being dead, should have it against the destroyer of her daughter. But it is for the legislature to give the action, courts can only declare the law as they find it.
The judgment should be reversed and a new trial granted.
All concur for affirmance except Allen and Folger, JJ., dissenting.
Judgment affirmed.