Bradbury, J.
The defendant in error was divorced from the plaintiff in error in a suit brought by him for her aggression. She. was awarded $1,500.00 for alimony, and two small children, the fruit of the marriage, were by the decree, placed in her custody, but no order was made respecting their maintenance. ■
She, living apart from the defendant in error,, supported the two children, and the question to be determined is whether she can maintain an action against him for board, clothing’, etc., which she has furnished to them, in the absence of any proof of a request by him that the support should be provided,.or of a promise to pay for it when provided. Upon this subject .the court of common pleas charged the jury as follows:
“It is conceded that at the September term, '1886, the defendant obtained a decree of divorce from the plaintiff for cruelty to him; that the court gave her alimony in the sum of $1,500.00 and the custody of the children till its further order, and that she has ever since had the children and boarded and clothed them. This easts upon the defendant the legal obligation to pay her what that board and clothing is reasonably worth.
“It makes no difference whether it was done with the defendant’s consent .or not, or. at his in *235 stance and request. Plaintiff’s right to recover is not founded in the defendant’s promise to pay, either expressed or implied, but upon his legal duty to provide for his children; and the order of the court giving her. the custody of the children and the caring for them.thereafter by the plaintiff, makes the defendant liable to pay the plaintiff what that board and clothing is fairly and reasonably worth.”
To this portion of the' charge the defendant excepted, and the question in issue between the parties was thus brought into the record. The defendant in error contends that this question is settled in her favor by the case of Pretzinger v. Pretzinger, 45 Ohio St., 452. In that case this court held that: “.The obligation of a father to provide reasonably for the support .of a minor child, until the latter is in a condition to provide for his own support, is not impaired by a decree which divorces the wife a vinculo, on account of the husband’s misconduct, gives to her the custody, care and nurture of the child, and allows her a sum as alimony, but with no provision for the child’s support.” In that case, as in the one under consideration, no question arose respecting the rig'hts of the child to reasonable support. • In both instances the necessaries had already been furnished by the divorced mother, and she was seeking, reimbursement from the father. The contention, therefore, related solely to the relative duties of the father and mother of minor children, where the parents are living separate in consequence of a divorce a vinculo, had between them, and the children had been awarded to the custody of the mother.
Where separation and divorce result from the *236 misconduct of the husband, the Pretzinger case, supra, asserts the primary liability of the father, in a contest between him and the mother, and in such ease, the rig-ht of the mother to recover against the father for such reasonable necessaries as. she has furnished, is established. That case is grounded in the principle that as the primary liability rests upon the father, he cannot, by his own misconduct, shift it to the mother. Dick-man, J., saying in reference to the natural duty resting on parents to support their children, that: “This natural duty-is not to be evaded by the husband’s so conducting himself, as to render it necessary to dissolve the bonds of matrimony. * * * It is not the policy of the law to deprive children of their rights on account of the dissensions of their parents, * * * or to enable the father to convert his own misconduct into a shield against parental liability.” Pretzinger v. Pretzinger, 45 Ohio St., 458. Again: “There is evidently no satisfactory reason for changing the rule of liability, when, through ill treatment, or other breach of marital obligation, the husband renders it necessary for a court of justice to divorce the wife, and commit to her the custody of her minor children.” Ib., 459.
In the case before the court, however, the wife was the aggressor, and it is this feature by which it is to be distinguished from the Pretzinger case, supra, for in that case the husband was in fault.' It does not necessarily follow that because a father cannot by his own misconduct shift from himself to the mother his primary liability to support his minor children, that the mother cannot, by her misconduct, produce that result, at least to the extent of denying to her a right to *237 recover against him for expenses she has incurred for necessaries for their support, in the absence of a request or promise by him in the premises.
The contest is between the parents. By the law of nature, the responsibility of each for the birth of children is equal; the moral obligation of nurture, protection and reasonable support bears upon each according to his or her capacity to afford it. Schouler, in referring to this obligation, says: “This is said to rest upon a principle of common law; but perhaps it may be more reasonably referred to the implied obligation which parents assume in entering into wedlock and bringing children into the world.” Schouler, Dom. Rel.
The common law in an earlier stage of its development, stripped the wife of her personal property, transferred to the husband the income of her real estate, vested in him the right to her earnings, denied to her the power of contracting, and merged her legal entity into his; and to compensate her for these disabilities, it absolved her from nearly every legal obligation and duty, including that of maintaining her children. Nor had she any legal control over them or right to their services. Even her widowhood did not re store this control or right, and this harsh doctrine was at one time recognized and applied by court of deservedly high authority in this country. Thus, as late as 1812, it was held in Commonwealth v. Murray, 4 Binney, 487, in respect of a widowed mother, that “an infant owes reverence and respect to his mother, but she has no legal authority over him, nor any legal right to his services.”
*238 Within the last half century, however, the harsh rules of the.common law respecting the property and domestic rights of married women have gradually yielded to more enlightened and humane notions, and consequently they have been greatly modified and ameliorated. The modifications and ameliorations which affect her property rights are chiefly' the result of legislation, but those affecting her domestic relations aré as much due to those enlightened views, which led to a more humane application of the rules of common law to that relation, as to direct legislative action. And in many instances, legislative action enlarging- her property and personal rights, have gradually led to the imposition of correlative duties, by the application of recognized principles of. the common law.
The husband and father while living with his family is its head, is entitled to the services of his minor children and is liable for théir reasonable support. Revised Statutes, sections 3108, 3109, 3110, 3113; Sharp v. Cropsey, 11 Barb. (N. Y.), 224.
Where, however, the husband is dead, the modern and better rule is that the mother is the head of the family and entitled to the' earnings and obedience of her minor children. Commissioners v. Hamilton, 60 Md., 340; State, for use of Coughlan, v. B. & O. R. R. Co., 24 Md., 84; O. & M. R. R. Co. v. Tindall, 13 Ind., 366; Furman v. Van Sise, 56 N. Y., 435; Matthewson v. Perry, 37 Conn., 435; Hammond v. Corbett et al., 50 N. H., 501; Gray v. Durland, 50 Barb., 100.
And whenever the mother is entitled to the obedience and services of her minor children,- it would seem' to follow, necessarily, that she should maintain them. Harsh and anomalous, indeed, a *239 rule of law must be that would give the earnings and custody of a minor child to a parent who was under no' reciprocal obligation of maintenance. The duty of maintenance by the mother is asserted by Schouler, Domestic Relations, section 293; Mowbry v. Mowbry, 64 Ill.,383; In Dedham v. Natick, 16 Mass., 140, the court say: “The mother, after the death- of the father, remains the head of the family. She has the like control over the minor children, as he had when living. She is bound to support them, if of sufficient ability; and they cannot, by law, be separated from her? ’
The cases, indeed, are rare, where a mother, having the ability, has declined to administer to the wants of her minor child. The law of nature is usually strong enough to secure this, and an appeal to municipal law is therefore seldom necessary. But, if a widowed mother with ample possessions should decline to administer to the necessities of her destitute minor child, a rule of law that would allow this, and suffer her to abandon it to private or public charity, would be a reproach to any system of jurisprudence.
If she is not bound to maintain her child, then she should not be permitted to keep it in subjection to her authority, or receive the wages of its labor. The right to keep her minor children together under her roof and to control their persons, implies the obligation to feed and clothe them; and the great weight of modern authority, as well as of reason, clothes her with those rights. - It may be that the authorities do not speak with equal emphasis upon the question of her duty of support, as they do in reference to her right to the custody and services of her children, but this should be attributed to the want of an occasion, and not to *240 the existence of any rule of law by which she can be vested with the control without the duty of maintaining her minor children.
Where a divorce a vinculo, is decreed, the bonds of matrimony are dissolved, and the former husband and wife become as strangers to each other, and the former wife is relieved from all the disabilities and duties incident to coverture. If children were born of the marriage, the paternal relation remains, and the duties pertaining to it continue. The primary obligation of maintaining .the children was on the husband and father — the foundation of this superior obligation rests upon the general fact that he is most capable of discharging it. His right, however, is to maintain his children in his own way and at his own fireside, where he can have the comfort of their society and the aid of their services. If, by his own misconduct the family relation is destroyed, and the welfare of the children render it necessary that they should be placed in the custody of the mother, he has no just ground to complain if he is compelled to maintain them in her home. However, even under these circumstances, if the mother has an ample fortune, and the resources of the father are comparatively limited, justice might require a modification of a rule founded upon the assumption of conditions, which in the particular case did not exist.
And although the separation and divorce were caused by the misconduct of the mother, it may nevertheless be true that the obligation of the father to reasonably provide for his children will follow them into the custody of the delinquent mother, when circumstances require them to be placed in her custody. If, however, under such *241 circumstances, it does so follow them, the reason and limit of this obligation of the father should be found in the necessities of the children. As to them, the natural obligation of protection, nurture and maintenance, press with equal force upon the parents. By the divorce a vinculo, the mother is as completely absolved from the marital relation as she would be by death, and if, in the course of the proceeding which end in an absolute divorce, the, minor children are put under her control, by her J procurement or in response to her wishes, her/ direct obligation towards them so long as she red tains them would seem to be founded upon as sub-j stantial considerations as if she were a widow J Their daily wants must be satisfied. Constant supervision maybe necessary. Can their divorced mother, who has received them into her custody, abandon them in the one case and not in the other ? We think not. By receiving them into her custody she should be held, as to them, to assume the obligations incident to that custody. If, under these circumstances, where her own misconduct has destroyed the family relation, and deprived the father of the custody and society of his chib dren, she has in fact maintained her children, she has no claim, legal or moral, to demand reimbursement from the father. She has simply discharged a duty cast upon her by -the plainest principles of natural justice, for the reason that the necessity for it arose from her own misconduct.
Judgment ■reversed,